STATE OF NORTH CAROLINA EX REL. THE UTILITIES COMMISSION v. CHAMPION PAPERS, INC.

(Filed 22 May 1963.)

**1. Utilities Commission §§ 3, 9—**

Within the time limited for transmitting the record to the Superior Court the Utilities Commission, notwithstandng the filing of notice of appeal, has jurisdiction and authority to reopen the case, to hear further evidence, and to make such changes in the original record as the Commission concludes the facts and the law warrant in order that the record may speak the truth. G.S. 62-26.4.

**2. Utilities Commission § 9—**

On appeal to the Superior Court the Utilities Commission's findings of fact are conclusive and binding if they are supported by competent, material, and substantial evidence in view of the entire record.

**3. Same; Utilities Commission § 9—**

Conflicting evidence as to which of two formulae properly separated petitioning carriers' intrastate from their interstate traffic for the purpose of fixing intrastate rates, and conflicting evidence with respect to the carriers' rate of return on intrastate shipments, *held* to raise questions of fact for the determination of the Utilities Commission, and the Commission's findings in regard thereto are binding when supported by competent, material, and substantial evidence.

**4. Utilities Commission § 6; Carriers § 5—**

The findings of fact of the Utilities Commission in this proceeding *held* supported by competent, material, and substantial evidence, and the findings support an order of the Commission allowing in part petitioning carriers' request for an increase in certain intrastate rates in order to permit a fair return on the railroads' property used in intrastate transportation and to prevent disparity between intrastate and interstate rates.

**5. Utilities Commission §§ 6, 9—**

The law imposes the duty upon the Utilities Commission and not the courts to fix rates, and the burden is upon appellant to show error of law in the proceeding before the Commission.

APPEAL by Champion Papers, Inc., from *Clark (Heman), J.,* December, 1962 Civil Term, WAKE Superior Court.

This proceeding originated before the North Carolina Utilities Commission upon petition of thirty railroads for authority to increase their intrastate freight rates and switching charges. The petitioners alleged the increase is necessary to permit a fair return on the railroad properties used and useful in their intrastate transportation business and to prevent disparity between the interstate and intrastate rates. The petitioners also requested increase in switching charges.

In due course, Champion Papers, Inc., primarily interested in rates on pulpwood, wood cores and wood chips, paper and paper products, caustic soda, and waste neutral salts, filed a protest to the proposed increases and was permitted to intervene as a party to the proceeding. Seven other shippers, including the North Carolina State Highway Commission and the North Carolina Department of Agriculture, whose interests were primarily in rates on stone, sand and gravel, and fertilizer, protested and were permitted to intervene.

The Commission began the hearings on May 25, 1961. The petitioning railroads introduced evidence consisting of oral testimony, reports, financial statements, and charts showing operating revenues and expenses for the previous ten years. The evidence tended to show the proposed increase in rates is necessary to meet increases in wages, payroll taxes, prices of materials, fuel and supplies, and to maintain the rate level between interstate and intrastate freight moving in or through North Carolina. The composite of the charts, according to the petitioners, tended to show that the proposed increase in rates amounts to only 1.77 per cent over the 1958 rates and is actually insufficient to meet increased costs of operation; that the increase would provide a rate of return lower than for any year since 1950.

Champion Papers, Inc., offered evidence tending to show the proposed rates, while varying according to the length of the haul, would amount to an average increase of 6½ per cent on its intrastate carriage of pulpwood, wood cores and wood chips; 6.6 per cent on shipments of neutral salts; 1.9 per cent on caustic soda; and 50 per cent on its intraplant switching charges. This protestant's director of traffic expressed the opinion that the proposed increase on wood products would result in a diversion of these items from rail to truck transportation; hence would not benefit the railroads. The traffic manager of the North Carolina State Highway Commission testified that in 1956 the railroads transported 24.7 per cent of the construction aggregates which it used or furnished in highway construction. In 1958 the railroads carried 13.5 per cent, and in 1960, 7.3 per cent. These figures do not include purchases of these materials by road contractors.

At the conclusion of the hearings, the railroads and the protestants filed briefs. Among the many findings and conclusions, the Commission entered the following: "The evidence of record and arguments of the parties on the separation of intrastate and interstate operations and property cause us to conclude that neither formula is sufficiently sound to support a decision that either can be accepted as a basis for determining that present rates should be increased as proposed, increased only in part, or not increased at all." However, on the basis of other findings, the Commission (Worthington dissenting) entered its order allowing (subject to certain exceptions) the proposed increase in freight rates, but denying any increase whatsoever in switching charges. The order was entered on December 19, 1961.

The Commission, on application of Champion Papers, Inc., extended to February 17, 1962, the time for filing notice of appeal to the Superior Court. On February 12, 1962, Champion Papers, Inc., filed with the Commission its notice of appeal, specifying 25 exceptions and assignments of error upon the ground the findings were not supported by competent, material, and substantial evidence; and that the actual findings were insufficient to support the Commission's conclusion and to sustain its order allowing the increase in freight rates.

On March 7, 1962, the petitioning railroads filed with the Commission motion for a further hearing "for the sole and limited purpose of receiving additional evidence and further considering its decision as to the question of whether the method used by the Petitioners in separating intrastate revenues, expenses, and property values from interstate revenues, expenses and property values is reasonable and acceptable . . ."

On March 8, 1962, the Commission, after a hearing on the motion, entered an order denying it. However, on April 16, 1962, the Commission, on its own motion, entered an order for a further hearing and gave notice to all interested parties "for the purpose of determining what alterations or amendments, if any, should be made to the original order issued by the Commission on December 19, 1961, without changing the result of the order."

At the beginning of the further hearing, counsel for Champion Papers, Inc., entered a special appearance and objected to any further hearing or the entry of any further order, basing the objection upon the ground the notice of appeal removed the proceeding from the Commission to the Superior Court and consequently the Commission was without power or authority to proceed further but was required to transfer the proceedings to the Superior Court for review. The motion was overruled and the Commission proceeded with the

further hearing, at which Mr. Luckett, Assistant Comptroller, Southern Railway System, testified in part:

"The lawyers representing the North Carolina railroads asked that the accountants of those railroads produce a formula or make a formula to the best of their ability that would attempt to approximate the intrastate operating results of the railroad within a state. A committee was formed of accountants representing 4 railroads—The Atlantic Coast Line, Seaboard, Norfolk-Southern and Southern Railway. I was appointed as a member representing Southern Railway and was made Chairman of that committee. This committee met on numerous occasions, studied every angle that they could, looked at each individual expense account. I repeat, 'individual expense account' and tried to think and determine the best method of separating expenses between interstate and intrastate operations. . . .

"The committee, in examining the expense accounts, divided the expenses into 3 categories—those of terminal or yard expenses, those of supervisory or overhead expenses. They determined that in the terminal or yard expenses or expense accounts, the traffic that generated this expense was the ton. Speaking of freight, all of my remarks are confined to freight traffic. A ton of freight originated a yard or terminal expense. The movement of that ton which generates ton miles generated the running expenses and that the supervisory and overhead expenses were related to the terminal on one hand and the running on the other. So they there took those individual accounts that related to the yard and terminal, separated them on the basis of interstate tons and intrastate tons ratio to the total tons in the State of North Carolina. That is to say, if there were ten tons originating, 2 tons would be intrastate and 8 tons interstate. Twenty percent of the yard expense within the State of North Carolina was assigned to intrastate.

"On running expenses, they took the intrastate ton miles within North Carolina, found the ratio of the intrastate to the total and applied such ratio to the running expenses within the State of North Carolina.

"As to the overhead expenses, they took the accounts that had previously been split on the basis I have outlined, totaled them together, found a new percent and applied that percent to the supervision or overhead expense relating to those accounts."

Mr. Hempel, Assistant Comptroller, Atlantic Coast Line Railroad, testified that the petitioners' Exhibit No. 10, a breakdown of the inter-

state and intrastate freight operations was prepared according to the formula testified to by Mr. Luckett, and that the witness had used the same formula in proceedings before the regulatory commission in a Florida rate case; that conditions in the two states are similar.

At the further hearing, the Commission found that the formula testified to by Mr. Luckett and Mr. Hempel has been made the basis of orders by the Interstate Commerce Commission and by the State authorities of California, Florida, Kansas, and Utah. At the conclusion of the further hearing, the Commission, among other findings, entered the following:

> "The problem of jurisdictional separations is of the most technical nature, especially in the transportation industry. There is no simple, absolute method of accomplishing it. In the long run one apparently must simply rely upon informed judgment, which it is our duty to exercise.
>
> "In the original order issued in this docket, we approved most of the increases involved. The formula was discussed as we saw it based upon the evidence before us. We reopened this hearing on our own motion because we were convinced that to do so might tend to expedite the ultimate disposition of the matter before the Commission and the Courts. After hearing further evidence related to the formula used, and its application, we are now satisfied that Petitioners have reasonably and fairly attempted the task of separating their properties, expenses, and revenues, and that, as amplified, we should now remove any doubts as to whether we feel the use of the formula justified our continued reliance thereon."

The findings with respect to the failure of the petitioning railroads to produce a formula separating its intrastate from its interstate operations were stricken. The Commission concluded: "Petitioners have shown to our satisfaction that the increases which we have allowed are justified and necessary. We have, however, exercised our prerogatives under G.S. 62-124 and related statutes to require additional proof in corroboration of this satisfaction."

The amendatory order was entered August 9, 1962. The appeal was certified to the Superior Court of Wake County on August 16, 1962. On the appeal, Judge Heman R. Clark overruled all exceptions entered by the appellant and affirmed the Commission's order. Champion Papers, Inc., appealed.

*Lake, Boyce & Lake, by I. Beverly Lake, for defendant Champion Papers, Inc., appellant.*

*Joyner & Howison, Maupin, Taylor & Ellis, Simms & Simms, for petitioners, appellees.*

HIGGINS, J. By 30 exceptive assignments, the appellant challenges as erroneous the order of the Superior Court affirming the Utilities Commission's findings of fact, its conclusions of law, and its order giving the petitioning railroads authority to increase their tariffs on North Carolina intrastate shipments of freight. The appeal presents these questions of law: (1) Did the Commission exceed its authority by reopening the proceedings after Champion Papers, Inc., had filed its notice of appeal? (2) Are the Commission's findings of fact supported by competent, material, and substantial evidence in view of the entire record? (3) Do the facts found support the conclusions and the order allowing, in part, the requested rate increase?

The appellant's objection to the Commission's action in reopening the proceeding for further hearing is without merit. Although the appellant had given notice of appeal, the Commission's time limit for transmitting the record to the Superior Court had not expired. G.S. 62-26.4. The statute provides the Commission on motion of any party to the proceeding, or on its own motion, may set the exceptions for further hearing. Surely the authority to reopen carries with it the duty to make such changes in the original record as the Commission concludes the facts and the law warrant in order that the record may speak the truth. Any error in the record, whether discovered by a party or by the Commission itself, may be reconsidered and corrected after proper notice at any time before the record passes from the Commission to the Superior Court by appeal. Consequently the order of December 19, 1961, is not the final order. The original order as amended on August 19, 1962, became the final order. "Ordinarily, the procedure before the Commission is more or less informal and is not as strict as in superior court, nor is it confined by technical rules; substance and not form is controlling." *Utilities Com. v. Area Development, Inc.*, 257 N.C. 560, 126 S.E. 2d 325.

On the appeal to the Superior Court the Commission's findings of fact are conclusive and binding if they are supported by competent, material, and substantial evidence in view of the entire record. *Utilities Com. v. Towing Corp.*, 251 N.C. 105, 110 S.E. 2d 886; *Utilities Com. v. R.R.*, 238 N.C. 701, 78 S.E. 2d 780.

At the further hearing, Mr. Luckett and Mr. Hempel explained the foundation and operation of their formula for separating intrastate from interstate operations. The method of applying the formula to the facts disclosed by the exhibits satisfied the Commission that the

formula as so applied fixed with reasonable reliability the fair value of the carriers' property used and useful in conducting their intrastate operations and justified the rate increase allowed.

The combined operations of the four leading railroads doing business in North Carolina — Atlantic Coast Line, Seaboard, Norfolk-Southern, and Southern — for the ten-year period beginning with 1950 showed a net operating income on total investment between the high of 4.64 per cent in 1955, and the low, 2.97 per cent in 1960. The average for the ten-year period, excluding tax deferrals, was 3.61 per cent. During the same period the cost of wages had increased 71.2 per cent. The cost of materials and supplies, including fuel, increased 40 per cent. In addition to the charts and studies showing investment, operating costs and expenses, bond debt, etc., the petitioners offered evidence that the rate per ton per mile is lower on intrastate than on interstate freight due to the shorter haul and the lower-rated products carried intrastate. The intrastate traffic carries a larger percentage of the lower-rated products, consisting principally of pulpwood, rock, sand, gravel, and fertilizer. These make up the bulk of the North Carolina intrastate shipments.

The formula devised by the railroads and employed in this proceeding appears to have been the outgrowth of this Court's opinions in *Utilities Com. v. State*, 243 N.C. 12, 89 S.E. 2d 727; and on rehearing, 243 N.C. 685, 91 S.E. 2d 899. This formula in principle was applied in *Utilities Com. v. State*, 250 N.C. 410, 109 S.E. 2d 368, and seems to have been approved by this Court without discussion. According to the tables, the statewide income of the Southern (excluding tax deferrals) for 1960 produced a return of 4.69 per cent. The three other major roads showed a much smaller return. The evidence with respect to the Class Two roads, most of which operate entirely intrastate, is not more favorable to them than the tables show to be the case in the four major lines.

The protestants appear to have offered before the Commission their own formula for separating intrastate from interstate freight traffic, but the Commission concluded it was not reliable as applied in this proceeding. Likewise, the respondents offered evidence, in part, conflicting with that offered by the railroads with reference to the rate of return which the petitioners would realize if the requested rates were authorized. However, the conflicts in the evidence presented questions to be resolved by the Commission. Its resolution is binding on the courts if the findings are supported by competent, material, and substantial evidence in view of the entire record.

In our opinion the record before us and before the Superior Court showed the presence before the Commission of evidence which measured up to the standard required as legal support for the Commission's findings. The conclusions followed. The two support the rate increase authorized. "It is the prerogative of that agency to decide that question. It is an agency composed of men of special knowledge, observation, and experience in their field, and it has at hand a staff trained for this type of work. And the law imposes on it, not us, the duty to fix rates." *Utilities Com. v. State* and *Utilities Com.. v. Telegraph Co.*, 239 N.C. 333, 80 S.E. 2d 133.

After careful review of the long record and the many exhibits dealings with highly technical information, we are forced to conclude that the one appellant which brought the record here for review has failed to show error of law in the proceedings. The judgment of the Superior Court is

Affirmed.