STATE OF NORTH CAROLINA, ON THE RELATION OF THE UTILITIES COMMISSION v. CENTRAL TRANSPORT, INC.

(Filed 19 December 1963.)

Carriers § 2—

The evidence before the Utilities Commission in regard to a manufacturer's need to work in close cooperation with its carrier in having trucks and personnel available at all times near its plant for loading shipments day or night as orders were received, etc., *held* sufficient to sustain the Commission's findings and conclusion thereon that a contract carrier is better qualified than a common carrier to meet the manufacturer's needs, and order of the Commission granting the contract carrier's application for such authority is affirmed.

APPEAL by Central Transport, Inc., from *Latham, S.J.*, March 18, 1963 Civil Session, RANDOLPH Superior Court.

This proceeding originated before the North Carolina Utilities Commission on application filed by O'Boyle Tank Lines, Inc., Arlington, Virginia, for contract carrier authority to transport by motor vehicle for Lone Star Cement Company dry cement in bulk and in bags from the shipper's plant in Winston-Salem, North Carolina, to all points and places in North Carolina. A written contract between the shipper and the applicant is made a part of the application.

Central Transport, Inc., High Point, North Carolina, and Maybelle Transport Company, of Lexington, North Carolina, filed protests alleging that they were authorized and fully equipped as common carriers to transport dry cement in bulk and in bags throughout North Carolina; that contract authority to O'Boyle Tank Line would be an unnecessary duplication not in the public interest and likely to jeopardize protestants' financial standing; and would add an unnecessary traffic hazard to the North Carolina public highways. The protestants were permitted to intervene and to be heard.

After hearing, the Utilities Commission, among other findings, made the following: Upon the completion of the Lone Star Cement Company's plant at Winston-Salem (by January 1, 1963) its transportation service will require that trucks be located at or near its distribution site; that a shuttle tractor with available operating personnel be kept on or near the yard at all times, both day and night. "The proposed operation conforms with the definition of a contract carrier, will not unreasonably impair the efficient public service of carriers operating under certificates and/or rail carriers nor unreasonably impair the use of the highways by the general public and will be consistant with the public interest and the transportation policy declared by the Truck Act. O'Boyle is fit, willing and able to perform the service proposed as a contract carrier."

The Commission concluded: "Careful consideration of all the facts and circumstances involved in this matter leads to the conclusion that the transportation needs of shipper more nearly conform to those required of a contract carrier rather than common carrier, and authority will, therefore, be granted."

The Commission ordered contract authority issue as requested upon the filing of schedules of rates and compliance with the requirements of the Commission, including a showing of insurance coverage.

Central Transport, Inc., one of the protestants, filed exceptions to the findings of fact and conclusions of the Commission, and appealed to the Superior Court. On the appeal Judge Latham overruled all excep-

tions and assignments of error and affirmed the Commission's order granting the contract authority as requested. The protestant appealed.

*Martin, Whitley and Washington by Robert M. Martin for Central Transport, Inc., protestant appellant.*
*Bailey, Dixon and Wooten by J. Ruffin Bailey for O'Boyle Tank Lines, Inc., appellee.*

HIGGINS, J. The O'Boyle Tank Lines, Inc., offered substantial evidence of its ability and equipment to perform the contract carrier service for which it requested authority.

The Lone Star Cement Company has distribution facilities in a number of eastern states. O'Boyle Tank Lines performs contract carrier service for that company in Virginia. Lone Star's Transportation Manager testified: "In order to render the service that is required by Lone Star Cement Corporation, whatever motor carrier we employ must, to all intents and purposes, become an integral part of that organization . . . He must have his equipment available to us for loading at any time of the night or day which we require. We load trucks sometimes at night for orders which we have on hand . . . and we also load trucks, . . . anticipating orders, . . . we do that in order that we can take advantage of some lull in the packhouse crews operation . . . (when) the packhouse crews are idle. We can then call on these trucks which are outside the packhouse door and finish out an eight-hour day for those men . . . We also have to work in agreement with this motor carrier to have direct wires to his office . . . a copy comes over a wire simultaneously to our packhouse so they will know what is to be loaded; . . . In all of our operation we prefer a contract carrier, . . . we have obtained the services of a contract carrier with one exception. . . . Our opinion is that the service which will be rendered by O'Boyle will be the type service we require. Our company is very much desirous of seeking the approval of the permit that is sought by this application."

From the testimony of Lone Star's Traffic Manager (sketchily quoted herein) the Commission was fully justified in concluding that a contract carrier is better qualified than a common carrier to meet Lone Star's motor transport needs. A common carrier must serve the public generally. A contract carrier is limited to serve the other party to the contract. G.S. 62-121.7 (3) and (4). The Commission's findings are fully sustained by the evidence in view of the entire record. *Utilities Comm. v. Ryder Tank Line,* 259 N.C. 363, 130 S.E. 2d 663; *Utilities Comm. v. Trucking Co.,* 223 N.C. 687, 28 S.E. 2d 201. The Commis-

sion's findings likewise furnish a valid basis for issuing the contract authority applied for in this proceeding. *Utilities Comm. v. Ray*, 236 N.C. 692, 73 S.E. 2d 870.

The judgment of the Superior Court of Randolph County is
Affirmed.