STATE OF NORTH CAROLINA, EX REL, UTILITIES COMMISSION AND ARTHUR TAB WILLIAMS, APPLICANT v. PETROLEUM TRANSPORTATION, INC., ASSOCIATED PETROLEUM CARRIERS, QUALITY OIL TRANSPORT, SOUTHERN OIL TRANSPORTATION COMPANY, INC., M & M TANK LINES, INC., EAST COAST TRANSPORT CO., INC., O'BOYLE TANK LINES, INC., KENAN TRANSPORT COMPANY, AND PETROLEUM TRANSIT COMPANY, INC. (SCHWERMAN TRUCKING CO.), PROTESTANTS

No. 6810UC396

(Filed 16 October 1968)

1. **Utilities Commission § 9— findings of fact**

Findings of fact by the Utilities Commission are conclusive and binding on appeal when supported by competent, material and substantial evidence in view of the entire record.

2. **Utilities Commission § 1— duty to publish regulations**

The Public Utilities Act authorizes and directs the Utilities Commission to publish rules and regulations. G.S. 62-49.

3. **Utilities Commission § 3; Carriers § 2— application for contract carrier permit**

Utilities Commission Rule R2-15(b) requires an applicant for a permit to operate as a contract carrier to show that one or more shippers or passengers have a need for a specific type of service not otherwise available by existing means of transportation.

4. **Utilities Commission § 3; Carriers § 2— contract carrier — requisites**

Where the applicant for a permit to operate as a contract carrier for a specified shipper offered no proof that the shipper has a need for a specific type of service not otherwise available by existing means of transportation, a finding by the Utilities Commission that the applicant met the test of a contract carrier is not supported by the evidence and the permit was improperly granted.

APPEAL by protestants from an order of North Carolina Utilities Commission (Commission) in Docket No. T-1408 entered 22 April 1968.

Arthur Tab Williams (applicant) on 21 September 1967 applied for a contract carrier permit, pursuant to G.S. 62-262(i), to engage in the transportation of petroleum products on a state-wide basis. Twelve certified common carriers of petroleum products filed protests to the application. A public hearing was duly held before Examiner E. A. Hughes, Jr., in November 1967. On 19 January 1968 Examiner Hughes issued a recommended order for the permit with the restriction that applicant be authorized to transport in intrastate commerce enumerated petroleum products "solely for the ac-

count of A. T. Williams Oil Company for service to its retail outlets and to its wholesale customers."

Protestants took exceptions and appealed to the Commission. On 22 April 1968 the exceptions were overruled and denied, and the recommended order was approved, affirmed and adopted as the order of the Commission. Commissioners Eller and McDevitt filed a dissent to the order.

Applicant is the president and principal stockholder of A. T. Williams Oil Company (Company), a corporation engaged in the sale, retail and wholesale, of petroleum products in North Carolina and Virginia. Company has always supplied and furnished its own transportation needs by use of its own equipment. Applicant, in his individual capacity, proposes to acquire from Company its transportation equipment and thereafter provide, for compensation, transportation requirements exclusively for Company between points and places in North Carolina. To facilitate this purpose, a contract was entered into between applicant and Company, and this contract was made a part of the application. The applicant neither intended nor desired to hold himself out to the general public as a common carrier by motor vehicle, as that term is defined in G.S. 62-3(7); on the contrary, he clearly intended to limit himself to serving only one specific shipper.

*Allen, Steed & Pullen by Thomas W. Steed, Jr.; Bailey, Dixon & Wooten by Wright T. Dixon, Jr., Attorneys for protestants, appellants.*

*Spry, Hamrick and Doughton by Claude M. Hamrick, Attorneys for applicant, appellee.*

*Edward B. Hipp and Larry G. Ford, Attorneys for North Carolina Utilities Commission, appellee.*

CAMPBELL, J.

The protestants assert two grounds to support their contention that the granting of the permit by the Commission is improper: one, the proposed operations do not constitute contract carriage, and two, the proposed operations are inconsistent with public interest and the policy of the Public Utilities Act.

G.S. 62-262(i) provides that where there is an application for a permit, the Commission shall give due consideration to whether the proposed operations conform with the definition of a contract carrier.

G.S. 62-3(8) defines a contract carrier as follows:

" 'Contract carrier by motor vehicle' means any person which, under an individual contract or agreement with another person and with such additional persons as may be approved by the Utilities Commission, engages in the transportation other than the transportation referred to in subdivision (7) of this section, by motor vehicle or persons or property in intrastate commerce for compensation, except as exempted in G.S. 62-260."

[1]    Findings of fact by the Commission are conclusive and binding upon the reviewing court when supported by competent, material and substantial evidence in view of the entire record. *Utilities Commission v. Champion Papers, Inc.*, 259 N.C. 449, 130 S.E. 2d 890; *Utilities Commission v. Radio Service, Inc.*, 272 N.C. 591, 158 S.E. 2d 855.

"The determination is presumed to be valid and is not to be disturbed unless it is made to appear that it is clearly unreasonable and unjust." *In re Department of Archives & History*, 246 N.C. 392, 98 S.E. 2d 487.

The determination of whether applicant meets the test of a contract carrier requires a review of what a contract carrier is.

The Commission issued a booklet, effective from and after 1 June 1948, entitled "Explanation of the North Carolina Truck Act of 1947 and Rules and Regulations for the Administration and Enforcement of Said Act." No rule is set forth in this booklet with regard to what is required for a permit for a contract carrier. There is, however, an explanation pertaining to what constitutes a contract carrier. This explanation contains the following:

"It may be stated as a general rule that it requires (1) individual contracts and (2) specialized service to distinguish a contract carrier from a common carrier. The specialized service varies according to the peculiar needs of the particular shipper. It may consist of furnishing equipment especially designed to haul a certain kind of property, or it may consist of the use of employees trained in loading, unloading, or handling a particular commodity. It may consist of services in addition to the usual transportation service, such as packing goods or the installation of machinery, *or it may consist of devoting all or a particular part of the carrier's services and equipment to the use of the particular shipper*. If the carrier does not limit himself to both individual contracts and some specialized service, his operations cannot be distinguished from those of a common carrier. Unless

his operations can be so distinguished, he is a common carrier." (Emphasis added)

In *Watson Transportation Co.*, Docket No. T-822, reported in North Carolina Utilities Commission Reports [1954-1955], at page 111, the applicant sought a permit for a contract carrier. The applicant was a stockholder and officer of Watson Hardware and Oil Company. For several years the applicant had leased his trucking equipment to the company and the company used the equipment to haul its own products. Applicant sought a permit to do the same work except as a contract carrier. Under date of 2 December 1954, a permit was granted since the applicant was "devoting all or a particular part of the carrier's services and equipment to the use of the particular shipper", in accordance with the above explanation.

The following year an order of 20 April 1955 denied such a permit. *McBane-Sonny Oil Co.*, Docket No. T-787, reported in North Carolina Utilities Commission Reports [1954-1955], at page 134. The applicant, in that case, desired a contract carrier permit, pursuant to which he would haul for two prospective shippers by virtue of a contract which had been discussed, but which apparently had not been consummated. The order stated that:

> "The protestants' evidence tends to show that adequate transportation service is available by common carriers and that there are idle tank trucks in the possession of authorized common carriers who stand ready and willing to serve the public.
>
> .  .  .  .
>
> Proof of a public demand and need for the service of a contract carrier is not required, but it must appear that one or more shippers want and will use the service of a contract carrier. It may be stated as a general rule that it requires individual contracts and specialized service to distinguish a contract carrier from a common carrier. A contract between a contract carrier and a shipper imposes obligations upon both carrier and shipper covering a series of shipments during a stated period of time, and it must be reasonably definite in its terms. The record in this cause is silent with respect to any reason or reasons why either of the two shippers, which applicant states will enter into contracts, desires, prefers or *needs* the service of a contract carrier rather than the service of a common carrier;  .  .  ." (Emphasis added)

This case stresses a need for the service and not just an exclusive devotion of services and equipment.

In *T. P. Ashford Oil Co.*, Docket No. T-1070, reported in North Carolina Utilities Commission Reports [July 1, 1956-June 30, 1958], at page 192, the applicant sought contract carrier permit. Applicant proposed to carry for Arkansas Fuel Oil Corporation from Wilmington to New Bern. This operation had been carried on by a common carrier but the change was desired because Arkansas wanted to give additional business to applicant, a distributor of Arkansas products. In addition to carrying for Arkansas, applicant was going to continue to use its equipment for its own personal and private needs. In denying the application, by order of 12 March 1958, the Commission stated that no specialized service and no peculiar need existed for this operation and that "applicant does not propose to offer any special service that will distinguish it as a contract carrier from a common carrier."

In *Newsom Transports, Inc.*, Docket .No. T-1119, reported in North Carolina Utilities Commission Reports [July 1, 1958-June 30, 1960], at page 173, applicant, a newly-formed corporation, was created for the purpose of taking over the transportation facilities of the Newsom Oil Company which had previously carried its own products. Applicant simply sought a change in operations by splitting the operation into two parts as in the *Watson Transportation* case, *supra*. The protestants indicated no objection to the granting of the permit, provided applicant's services were limited to the Newsom Oil Company. In view of the fact that there was no protest, this case is not persuasive of any policy on the part of the Commission and the permit could be justified for the same reason as in *Watson Transportation* case, *supra*.

[2]   In 1963 the General Assembly enacted the Public Utilities Act and G.S. 62-49 authorized and directed the Commission to publish rules and regulations. Pursuant thereto, the Commission adopted, by order of 18 September 1963, rules to become effective 1 January 1964.

[3]   Rule R2-10(b) provides:

"Contract carrier authority for the transportation of passengers or property will not be granted unless the proposed service conforms to the definition of a contract carrier as defined in G.S. 62-3(8) and applicant meets the burden of proof required under the provisions of G.S. 62-262(i) and Rule R2-15(b)."

Rule R2-15(b) provides:

"If the application is for a permit to operate as a contract carrier, proof of a public demand and need for the service is not re-

quired; however, *proof is required that one or more shippers or passengers have a need for a specific type of service not otherwise available by existing means of transportation,* and have entered into and filed with the Commission, prior to the hearing or at the time of the hearing, a written contract with the applicant for said service, which contract shall provide for rates not less than those charged by common carriers for similar service." (Emphasis added)

This rule eliminates "proof of a public demand and need for the service", but it specifically requires "a need for a specific type of service not otherwise available by existing means of transportation."

*Weil-Creech Transport Corp.,* Docket No. T-987, Sub 5, reported in North Carolina Utilities Commission Reports [January 1, 1964-December 31, 1964], was heard in November 1963, but the order granting the contract carrier permit was issued 5 March 1964. In that case there was a conclusion as follows:

"There is a need for contract service to handle petroleum and petroleum products from the terminal of Gulf Oil Corporation at Selma, North Carolina, to and for Weil-Creech Oil Company, as hereinbefore set out. The contract carrier dedicates his equipment and makes his service available to those with whom he has contracted and is, therefore, in a position to render such service to points of destination which may or may not be on the route of some regular carrier, and to render such service at any time."

In other words, the Commission found, "(t)here is a need for contract service."

In *Tom B. York, d/b/a Hill-Top Transport,* Docket No. T-1057, Sub 1, reported in North Carolina Utilities Commission Reports [January 1, 1964-December 31, 1964], at page 96, there was an application for an extension of contract carrier rights from terminals other than those for which the applicant already had rights. In that case the application was denied by order of 3 February 1964, and among other things, the Commission found "that applicant introduced no evidence to show a need for hauling from any terminals other than the three from which he now has authority; that applicant offered no evidence to show that there is a need for his services beyond the areas where he is now authorized to make deliveries." Here again, the Commission stressed the requirement of showing the need.

In the instant case the only evidence pertaining to any need for

UTILITIES COMM. *v.* PETROLEUM TRANSPORTATION, INC.

the services applied for consisted of the following testimony of the applicant:

> "The purpose of wanting the contract authority as contrasted to carrying it in our own corporation is that I have been advised by my accountants and also the legal office that they think this would be a proper step for operation in carrying out the goals that we desire. . . .
>
> . . . .
>
> (T)he effect is to allow me to split up my operation from what is now known as a corporate enterprise into a corporate enterprise and personal enterprise. This does not in any way mean that there is not adequate transportation available to me from other sources. I have no complaint about it. I had not had any cause when I went into this business originally to do so from a lack of common carrier transportation. It is simply something that I went into as a matter that is more profitable to my operation to handle our own. It would be correct to say that my application today is solely for my own gain rather than from any inadequacy in the transportation system in North Carolina."

[4]    The record is completely devoid of any proof that Company, the only shipper involved, has a need for any specific type of service that is not otherwise available by existing means of transportation. The finding of fact by the hearing examiner, which was adopted by and became the finding of fact by the Commission "(t)hat the proposed operations conform with the definition of a contract carrier as contained in the Public Utilities Act", is not supported by any evidence in this record. The vice in the instant case is that the Commission followed its explanation of a contract carrier in the 1948 booklet and did not follow the requirement of its Rule R2-15(b). Under the latter, the applicant does not meet the test of a contract carrier.

The evidence on this record being insufficient to support the findings of fact of the Commission and the conclusions of law based thereon, this cause is remanded to the Commission for such findings and order in the premises as may be proper, not inconsistent with this opinion.

MALLARD, C.J., and MORRIS, J., concur.