STATE OF NORTH CAROLINA, EX REL, UTILITIES COMMISSION AND FIRST COURIER CORPORATION v. AMERICAN COURIER CORPORATION

No. 7010UC65

(Filed 24 June 1970)

1. Carriers § 2— contract carrier of commercial records — application for permit — sufficiency of findings

The Utilities Commission properly granted an application for a contract carrier permit which would authorize the applicant to transfer commercial papers and other business records between all points and places in this state, notwithstanding the arguments by an existing con-

tract carrier of commercial papers that it could serve the needs of the applicant's proposed customers and that the granting of the application would adversely affect its business, where there were findings, supported by competent and substantial evidence, that banks and other institutions needed the services offered by the applicant and that their needs could not be met by the services of the existing carrier.

APPEAL by American Courier Corporation from the order of the North Carolina Utilities Commission dated 4 August 1969.

This proceeding was initiated on 20 November 1968 when the applicant, First Courier Corporation, filed an application with the North Carolina Utilities Commission for a permit authorizing it to transport as a contract carrier certain commercial papers, cash letters, audit and accounting media and other business records, documents and supplies used in processing such media and records and documents between all points and places in North Carolina.

On 30 January 1969, American Courier Corporation filed with the Utilities Commission a Protest and Motion for Intervention, alleging that it held authority as a contract carrier to transport the commodities sought by the applicant between all points and places in North Carolina over irregular routes under individual contracts with shippers, that the operations of the applicant under this permit, if granted, would be directly competitive with the operations of the protestant, and that the applicant does not meet the burden imposed by G.S. 62-262 for the granting of a contract carrier permit in that (a) the operations as proposed by the applicant do not conform with the definition of a contract carrier under rules of the Utilities Law; (b) the operations of the applicant will unreasonably impair the efficient public service of the protestant as well as other carriers operating in North Carolina; (c) the applicant is not fit nor able to properly perform the services proposed; and (d) the operations are not consistent with public interest and the transportation policy declared in the Public Utilities Act of North Carolina.

On 20 March 1969, 3 June 1969 and 4 June 1969, hearings were held before the Utilities Commission regarding this application. The petitioner, First Courier Corporation, presented evidence which tended to show the following facts: The petitioner is a wholly-owned subsidiary of First Union Bank Corporation, a holding company

UTILITIES COMM. *v.* AMERICAN COURIER CORP.

which holds several subsidiary corporations. First Union Bank presently is operating a courier service providing transportation services to 119 locations in 50 cities extending from Sylva in western North Carolina to Greenville in eastern North Carolina for banking documents, supplies and media on special schedules operating 24 hours per day, seven days per week. The demand for such a transportation service has increased to the point where its operations can best be carried on and conducted as an independent corporation. Upon approval of the permit by the North Carolina Utilities Commission, the equipment and personnel of the Courier Department of First Union National Bank will be transferred to the new subsidiary. These items would consist of seventeen vehicles and twenty-four drivers along with supervisory and dispatch personnel. Extensive security measures will be taken to insure the safety of the commodities being transported and the drivers would be properly and adequately trained.

Several witnesses testified in behalf of the applicant that their corporation was in need of transportation services between their several offices and that the needed service is not available at the present time by common carriers. Each of the witnesses had signed contracts with the applicant and had agreed to utilize the services of the applicant.

The protestant, American Courier Corporation, has operated in North Carolina as a contract carrier under a permit issued by the North Carolina Utilities Commission in 1958. Their permit authorizes them to transport commodities of the same general type sought to be transported by the applicant. The protestant operates approximately 32 routes throughout the State and serves approximately 439 banks and approximately 50 commercial concerns other than banks. American Courier contends that granting of the permit to First Courier Corporation would adversely affect their business because American Courier cannot force any business to enter a bilateral contract for its services and because American Courier has been serving some of the parties with whom the applicant has now contracted.

The North Carolina Utilities Commission, after hearing the evidence presented by the applicant and the protestant, entered the following findings and conclusions based thereon:

## "FINDINGS OF FACT

"1. The applicant, First Courier, is a duly organized North Carolina corporation and subsidiary of First Union National

Bank Corporation, authorized by its charter to engage in the business of general transportation. According to its pro forma balance sheet, as of the date it will begin operations, it will have assets of $250,000 including equipment valued at $185,000 and $50,000 in cash.

"2.  The proposed operations of First Courier conforms with the definition of a contract carrier by motor vehicle; will not unreasonably impair the efficient service of carriers operating under certificates or rail carriers; will not unreasonably impair the use of the highways by the general public; and the Applicant is fit, willing and able to perform the proposed service as a contract carrier.

"3.  The proposed operation will be consistent with the public interest and the policy declared in Chapter 62 of the General Statutes of North Carolina.

"4.  Applicant, First Courier Corporation, has entered into bilateral contracts for the proposed service with First Union National Bank of North Carolina, First Card Corporation, Peoples Bank, the Northwestern Bank, Southern National Bank, First National Bank of Catawba, and Cameron-Brown Company.

"5.  The Protestant, American Courier, is a contract carrier by motor vehicle operating under a permit issued by the Utilities Commission under the provisions of GS 62-262(h)(i) and performs service in North Carolina as a contract carrier as defined in GS 62-3(8) and GS 62-3(9), and as a contract carrier, does not hold itself out to serve the public generally as a common carrier and is not authorized under the Public Utilities Act and said definitions to serve the public generally as a common carrier, and is not a carrier operating under a certificate of the Commission within the provisions of GS 62-262(i)(2) for consideration as to whether the operations proposed in the application will unreasonably impair the efficient public service of the Protestant, and its protest is considered under other provisions of the Public Utilities Act, as discussed under the conclusions hereinafter set forth.

"CONCLUSIONS

"Applicant, First Courier Corporation, has borne the burden of proof that there is a public need by several shippers for the proposed service which conforms to the definition of a Contract Carrier by Motor Vehicle contained in GS 62-3(8). Bilateral

UTILITIES COMM. *v.* AMERICAN COURIER CORP.

contracts between the applicant and shippers have been filed in accordance with Commission Rule R2-15. The Commission is of the opinion and concludes that the Applicant has fulfilled the requirements of the Public Utilities Act and the rules and regulations of the Commission and is entitled to a contract carrier permit authorizing it to perform the proposed transportation service.

"The Commission has given consideration to the protest of American Courier and to the testimony offered by American Courier with respect to its operations in North Carolina and cannot find that the proposed operations of the Applicant will improperly or unlawfully interfere with or impair any rights granted to existing contract carriers under the Public Utilities Act.

"Contract carriers holding permits under GS 62-262 are not afforded the same protection in their permit authority from subsequent applications as the Public Utilities Act affords to common carriers operating under certificates issued under the Public Utilities Act. A common carrier is given certain protection in its franchise area consistent with the duty and obligation of the common carrier to provide service to the public under rates and charges on file with the Utilities Commission and regulated by the Utilities Commission. The common carrier must provide service on call and demand to all of the public at published regulated rates and in return for the obligation and duty to provide such service the common carrier is granted certain franchise protection of the Public Utilities Act so long as it is able to adequately serve the public. The contract carrier, on the other hand, is not required to serve anyone and does not serve anyone except those that it voluntarily enters into contracts with for motor carrier service. The contract carrier's minimum rates are on file with the Commission, but it is not required to provide service at such minimum rates and may decline to enter into a contract except at such rates as it desires to negotiate in any particular contract.

"The Public Utilities Act does not place the same burden and obligation upon contract carriers as it places upon common carriers to provide service in their service area and, by the same token, it does not provide the same franchise protection afforded to common carriers. A protesting contract carrier is permitted to intervene and its protest is heard primarily under the provisions of GS 62-262(i)(5) on the requirement that the Com-

mission give consideration in permit applications to 'whether the proposed operations will be consistent with the public interest and the policy declared in this chapter;'. The Commission has given due consideration to the proposed operations and finds that they are consistent with the public interest and with the policy declared in the Public Utilities Act, i.e., Chapter 62 of the General Statutes.

"The Commission concludes that it would not be in the public interest to deny the application based upon the desire of the protestant, American Courier, for protection from another contract carrier of bank documents in securing authority to engage in similar transportation of bank documents as a contract carrier. The protection of one contract carrier of bank documents from any competition when the contract carrier has no duty and obligation to serve the public would be contrary to the public interest. The Protestant, American Courier, is free to pick and choose the banks and other customers shipping bank documents which it desires to serve, and it is free under its permit to offer its services to selective banks or bank chains to the exclusion of other banks or bank chains. To deny the Applicant's permit for contract authority to contract with such other banks and similar shippers who do not enter into contracts with American Courier would be to authorize arbitrary power of American Courier to confer its services upon such bank or bank chains as it chooses at unregulated contract rates and would leave other banks and banking customers without recourse to for-hire motor carrier service as contemplated under the contract carrier permit authority provided in the Public Utilities Act."

From the entry of the order granting the permit to the applicant, American Courier Corporation appealed to the North Carolina Court of Appeals.

*Edward B. Hipp and Larry G. Ford for the Utilities Commission.*

*Bailey, Dixon, Wooten and McDonald, by J. Ruffin Bailey and Ralph McDonald, for the applicant appellee.*

*Allen, Steed and Pullen, by Thomas W. Steed, Jr., for protestant appellant.*

HEDRICK, J.

[1] The protestants in this action contend that the Utilities Commission was in error in granting the permit to the applicant, First

Courier Corporation, to operate as a contract carrier in the State of North Carolina in that the order was erroneous as a matter of law and was unsupported by competent, material and substantial evidence.

[2]   On appeal to the Court of Appeals of North Carolina, findings of fact of the Utilities Commission are conclusive and binding if they are supported by competent, material and substantial evidence in view of the entire record. *Utilities Comm. v. Petroleum Transportation, Inc.*, 2 N.C. App. 566, 163 S.E. 2d 526 (1968); *Utilities Commission v. Champion Papers, Inc.*, 259 N.C. 449, 130 S.E. 2d 890 (1963); *Utilities Commission v. Towing Corp.*. 251 N.C. 105, 110 S.E. 2d 886 (1959); *Utilities Commission v. R. R.*, 238 N.C. 701, 78 S.E. 2d 780 (1953); *Utilities Commission v. Radio Service, Inc.*, 272 N.C. 591, 158 S.E. 2d 855 (1968).

[1]   G.S. 62-262(i) sets forth the criteria to be used by the Utilities Commission in determining whether a permit is to be granted authorizing an applicant to operate as a contract carrier. This section states that the Commission shall give due consideration to:

"(1)   Whether the proposed operations conform with the definition in this chapter of a contract carrier,

"(2)   Whether the proposed operations will unreasonable impair the efficient public service of carriers operating under certificates, or rail carriers,

"(3)   Whether the proposed service will unreasonably impair the use of the highways by the general public,

"(4)   Whether the applicant is fit, willing and able to properly perform the service proposed as a contract carrier,

"(5)   Whether the proposed operations will be consistent with the public interest and the policy declared in this chapter; and

"(6)   Other matters tending to qualify or disqualify the applicant for a permit."

G.S. 62-3(8) defines a contract carrier as follows:

" 'Contract carrier by motor vehicle' means any person which, under an individual contract or agreement with another person and with such additional persons as may be approved by the Utilities Commission engages in the transportation other than the transportation referred to in subdivision (7) of this section, by motor vehicle of persons or property in intrastate commerce for compensation, except as exempted in G.S. 62-260."

The Utilities Commission in the present case, in Finding of Fact Number 2, specifically found that the proposed operations of the applicant, First Courier Corporation, met the statutory requirements of G.S. 62-262(i). The findings are supported by competent, material and substantial evidence and we, as the reviewing court, are bound by them.

The protestant contends that the permit should not have been issued to the applicant because the applicant does not meet the requirements of N.C.U.C. Rule R2-15(b).

By the provisions of G.S. 62-49, the Utilities Commission was authorized and directed to publish rules and regulations.

Rule R2-10(b) provides:

"Contract carrier authority for the transportation of passengers or property will not be granted unless the proposed service conforms to the definition of a contract carrier as defined in G.S. 62-3(8) and applicant meets the burden of proof required under the provisions of G.S. 62-262(i) and Rule R2-15(b)."

Rule R2-15(b) provides:

"If the application is for a permit to operate as a contract carrier, proof of a public demand and need for the service is not required; however, proof is required that one or more shippers or passengers have a need for a specific type of service not otherwise available by existing means of transportation, and have entered into and filed with the Commission, prior to the hearing or at the time of the hearing, a written contract with the applicant for said service, which contract shall provide for rates not less than those charged by common carriers for similar service."

The protestant, American Courier, contends that the evidence clearly indicates that its services were readily available to serve the precise needs of the witnesses for the applicant and that in some instances they were doing so. The evidence does not so show. The testimony of the witness, Raymond Griffin, Manager of Data Processing of Southern National Bank in Lumberton, North Carolina, was that his company has a need for transportation of interbank correspondence, audit and accounting media, including cash letters to their offices as far north as Henderson, east to Edenton, south to Tabor City and west to Mt. Gilead. He testified that at the present time they are using the U.S. Mail, bus express, their private cars and First Union National Bank's private courier service which has been provided to them free of charge. Mr. Griffin

testified that no other transportation services were available to them in Lumberton and that no common carrier service is available to meet their specific needs. When questioned in regard to service provided or offered by the protestant, Mr. Griffin testified that they had had no contact with American Courier and that they did not receive any proposal or offer of service to their corporation until 12 April 1969 when American Courier submitted a proposal to them to provide service for $44,000.00, a rate twice what they now are paying. The letter and proposal from the protestant was received approximately five months subsequent to the filing of the application by First Courier Corporation for a permit to operate as a contract carrier.

Bob Harrington, of Cameron-Brown Company, a mortgage banking institution and a wholly-owned subsidiary of First Union National Bank Corporation, Inc., testified that he was familiar with the services offered by the protestant but that he did not learn of the service provided by the protestant until after he began negotiations with First Courier Corporation. He testified that there are several ways in which American Courier does not provide service to meet the specific requirements of Cameron-Brown, and that his company has several offices which are not on the protestant's service routes. Mr. Harrington testified that American Courier offered to provide his company with service after he had signed a contract with First Courier and that they offered to put on the necessary men and equipment if Cameron-Brown would pay the additional cost and if they would sign a sufficient contract to guarantee reimbursement of the costs of the additional runs.

From this evidence, it is clear that the applicant has met the requirements of N.C.U.C. Rule R2-15(b).

The protestant, American Courier Corporation, bases much of its opposition to the granting of the permit to the applicant on the ground that if the permit were granted it would then have competition in the area of transportation. Protestant contends that such competition should not be allowed since the granting of the proposed application would adversely affect the business of American Courier. We do not feel that this is a sufficiently compelling reason to prohibit the entrance of other contract carriers into the field of transporting bank documents and other commodities. In *Utilities Commission v. Coach Co.,* 261 N.C. 384, 134 S.E. 2d 689 (1964), our Supreme Court, speaking through Moore, J., said: "There is no public policy condemning competition as such in the field of public utilities; the public policy only condemns unfair or destructive com-

petition." This Court, in the recent case of *Utilities Comm. v. Petroleum Carriers,* 7 N.C. App. 408, 173 S.E. 2d 25 (1970), citing the above passage from the *Coach Co.* case, stated: "The possibility that a transfer of authority to a more competitive carrier will adversely affect existing carriers does not make such a transfer contrary to 'the public interest' as a matter of law." So, too, in the present case, the Utilities Commission's action in authorizing the granting of the permit to the applicant does not denominate the competition generated by that action unfair or against the "public interest". The testimony contained in the voluminous record indicates that the field of commodity transportation is still open and has not been closed out by the granting of this permit.

For the reasons given in the above opinion, the order of the North Carolina Utilities Commission granting First Courier Corporation's application for a permit authorizing it to transport bank commodities is

Affirmed.

MALLARD, C.J., and PARKER, J., concur.