STATE OF NORTH CAROLINA, EX REL., UTILITIES COMMISSION AND CONTRACT TRANSPORTER, INC., APPLICANT-APPELLEE v. M.L. HATCHER PICKUP & DELIVERY SERVICES, INC., PROTESTANT-APPELLANT

No. 7910UC850

(Filed 5 August 1980)

Carriers § 2.7– grant of contract carrier authority – sufficiency of evidence to support findings

　　The record as a whole supported findings by the Utilities Commission that an applicant for a permit to act as a contract motor carrier for Schlitz Brewing Company to transport bottles, pallets and packing materials between Kerr Glass Company in Wilson and the Schlitz plant in Winston-Salem met the definition of a contract carrier, that Schlitz had a need for a specific type of service, that such service is not otherwise available by existing means of transportation, and that the applicant's proposed operations will not unreasonably impair the efficient public service of common carriers.

Judge MARTIN (Robert M.) dissenting.

APPEAL by protestant from final order of the North Carolina Utilities Commission. Order entered 8 June 1979. Heard in the Court of Appeals 19 March 1980.

This case involves an application by Contract Transporter, Inc. (hereinafter applicant) for a contract carrier permit, which permit was granted by a hearing examiner and subsequently affirmed by the Commission. Pursuant to G.S. 62-262, applicant applied for a contract carrier's permit to transport bottles, pallets, and packing materials between Kerr Glass Company in Wilson and Schlitz Brewing Company in Winston-Salem.

M.L. Hatcher Pickup and Delivery Services, Inc., a common carrier (hereinafter protestant), filed a protest and motion for intervention alleging that the applicant's proposed service does not conform with the definition of a "contract carrier" under G.S. 62-262(i)(1) and Rule R2-15(b) of the Commission, since the transportation needs of Schlitz are not such as would require any special type of service not available from the protestant and that the service proposed would unreasonably impair the efficient public service of protestant and other carriers and be inconsistent with the public interest.

APPLICANT'S EVIDENCE

Applicant's evidence tended to show that since 1973, it had a contract to transport bottles as a contract carrier for Schlitz between Owens-Illinois Company in Midway and Schlitz Brewery in Winston-Salem. Schlitz and Owens terminated their contract and Kerr Glass Company in Wilson became Schlitz's new supplier. Applicant has provided services for Schlitz since the new contract, using special equipment. The glass bottles transported for Schlitz are moved in unitized pallet loads in bulk form and in corrugated cartons and trays, also on pallets. Trailers specially equipped with automatic electrical unloading systems are required for moving the bulk bottles. These are 43 foot and 48 foot custom design rollerbed trailers with specifications for overall height and minimum door opening height. They have rollers, which are recessed below the floor level when not in use and which are hydraulically raised when needed. Approximately 40 percent of Schlitz's traffic from Wilson to Winston-

Salem requires specialized rollerbed equipment to be available and to be continuous. Sixty percent of the traffic does not require specialized equipment but does require continuity of service.

Mr. Joseph Erwin, director of traffic for Schlitz, testified that the scheduled delivery of bottles to the brewery is critical and must be consistent and dependable due to the minimum storage room available for bottles at the brewery. Otherwise, irreparable harm will be caused to Schlitz's manufacturing process. Schlitz needs one carrier to provide both specialized and non-specialized service.

### PROTESTANT'S EVIDENCE

Protestant's evidence tended to show that it had purchased eight rollerbed trailers which would meet Schlitz's specifications. It had made efforts to solicit Schlitz's business and would be willing to dedicate equipment to Schlitz on a long-term basis or enter a contract with Schlitz. Protestant's vice-president and general manager testified that it was his understanding that the regulations had been changed so as to allow common carriers to have contract authority also. He proposed to perform the service under the protestant's general commodity authority although this does not include the authority to carry any commodity for which special equipment is required. Protestant has the rollerbed equipment and will give no one customer preference over another.

The hearing examiner's recommended order, which was affirmed by the Commission, granted the applicant contract carrier authority including, *inter alia*, that the proposed operations conformed with the definition of contract carrier pursuant to G.S. 62-3(8); that the applicant is fit, willing, and able to perform; that the proposed operations would be consistent with the public interest and policy; and that the applicant has met its statutory burden of proof. Protestant appealed.

*Allen, Steed & Allen, by Thomas W. Steed, Jr. and Noah H. Huffstetler III, for applicant appellee.*

*Bailey, Dixon, Wooten, McDonald & Fountain, by Ralph McDonald, for protestant appellant.*

ERWIN, Judge.

Protestant's appeal is based on three questions. The initial question asks:

"(1) Are the Utilities Commission's findings of fact sufficient to support its conclusions that the proposed operations conform with the definition of a contract carrier and that the applicant has met the burden of proof prescribed by statute?"

We do not find error.

*Contract Carrier*

G.S. 62-262(i) sets out what the Commission must consider before it may issue a permit to a contract carrier. G.S. 62-31 authorizes the Commission to make rules and regulations. Pursuant thereto, the Commission promulgated NCUC Rule R2-10(b) and NCUC Rule R2-15(b).

Rule R2-10(b) provides:

"(b) Contract carrier authority for the transportation of passengers or property will not be granted unless the proposed service conforms to the definition of a contract carrier as defined in G.S. 62-3(8) and applicant meets the burden of proof required under the provisions of G.S. 62-262(i) and Rule R2-15(b)."

Rule R2-15(b) provides:

"(b) If the application is for a permit to operate as a contract carrier, proof of a public demand and need for the service is not required; *however, proof is required that one or more shippers or passengers have a need for a specific type of service not otherwise available by existing means of transportation,* and have entered into and filed with the

Commission with a copy to the Public Staff prior to the hearing or at the time of the hearing, a written contract with the applicant for said service, which contract shall provide for rates not less than those charged by common carriers for similar service." (Emphasis added.)

The rule in this jurisdiction is that the findings of fact by the Utilities Commission are conclusive and binding on appeal when supported by competent, material, and substantial evidence in view of the entire record. *Utilities Comm. v. City of Durham*, 282 N.C. 308, 193 S.E. 2d 95 (1972); *Utilities Comm. v. Tank Lines and Utilities Comm. v. Transport Co.*, 34 N.C. App. 543, 239 S.E. 2d 266 (1977), *appeal dismissed*, 294 N.C. 363, 242 S.E. 2d 633 (1978). "Ordinarily, the procedure before the Commission is more or less informal, and is not as strict as in superior court, nor is it confined by technical rules; substance and not form is controlling." *Utilities Commission v. Area Development, Inc.*, 257 N.C. 560, 569, 126 S.E. 2d 325, 332 (1962). We concede that the order in question could have been more artfully drawn; however, the order is more than the mere recital of testimony taken at the hearing before the examiner. We hold that the entire record supports Findings of Fact Nos. 17 and 18, and the Commission's findings are conclusive and binding upon us on review, in that, they are supported by competent, material, and substantial evidence. *Utilities Commission v. Radio Service, Inc.*, 272 N.C. 591, 158 S.E. 2d 855 (1968); *Utilities Commission v. Champion Papers, Inc.*, 259 N.C. 449, 130 S.E. 2d 890 (1963).

### Specific Type of Service

Applicant filed a written contract under which it would provide transportation of certain property for Schlitz by motor vehicle for compensation. Applicant conformed to the threshold definition of a contract carrier. G.S. 62-3(8). Protestant contends applicant failed to establish by competent, material, and substantial evidence that: (1) Schlitz had a need for a specific type of service; and (2) service is not otherwise available by existing means of transportation. We do not agree.

Mr. Erwin testified:

"The automated trailers have rollers which are recessed below the floor level when not in use and are hydraulically raised when required for the loading or unloading operation. This equipment requires considerable maintenance, and CTI has the experience and mechanically trained personnel to provide proper preventive maintenance for dependable delivery to deep production lines of the Schlitz brewery running without interruption.

. . . .

The scheduled delivery of material to the brewery is critical and must be consistent and dependable, as there is usually minimum room for storage of bottles in the brewery. Therefore, in a manner of speaking, the custom rollerbed trailers are considered a required part of the production line of the brewery. Production is usually on three shifts per day and five days per week. During peak production periods, bottle deliveries are sometimes required seven days per week.

Contract Transporter, Inc., is also the exclusive carrier of cans between the Schlitz can plant, brewery and warehouse. This carrier is familiar with the needs of Schlitz and gives extraordinary custom service, not only with specialized equipment but during all hours of the night and weekends when service is required.

* * *

Van trailers equipped with automatic unloaders such as the Essex system are what I have referred to as special equipment. It is a good system in my experience. The Applicant, Contract Transporter, has the Essex type of equipment which is satisfactory for our needs at Winston-Salem.

* * *

To summarize our company's transportation needs, for forty percent of our traffic we need the rollerbed equipment service to be available and continuous. For the remaining

sixty percent of our traffic between Wilson and Winston-Salem we do not have a need for any specialized equipment, but we have the need for continuity of service."

Protestant contends the evidence shows that only 40 percent of the future movements from Wilson to Winston-Salem would be in rollerbed equipment and that it does not follow that the need for regular van equipment on the other 60 percent is also a specific need. The Commission with its experts found that applicant could meet the needs of the shipper over that of a common carrier which must serve the public generally. We hold that the Commission's findings of fact and conclusions of law are supported by the evidence in the record before us. *Utilities Comm. v. McCotter, Inc.*, 283 N.C. 104, 194 S.E. 2d 859 (1973); *Utilities Commission v. Transport*, 260 N.C. 762, 133 S.E. 2d 692 (1963).

G.S. 62-94(e) provides: "Upon any appeal, the rates fixed, or any rule, regulation, finding, determination, or order made by the Commission under the provisions of this Chapter shall be prima facie just and reasonable." The evidence was sufficient to permit and sustain the Commission's findings of fact, conclusions, and the decisions based thereon. *See Utilities Comm. v. McCotter, Inc., supra.*

### Impairment of Public Service

Protestant contends that applicant has not met its burden (1) under NCUC Rule R2-15(b) of showing that the specific type of service is not otherwise available by existing means of transportation and (2) under G.S. 62-262(i)(2) by showing that its proposed operations will not unreasonably impair the efficient public service of common carriers. Protestant relies on *Utilities Comm. v. Petroleum Transportation, Inc.*, 2 N.C. App. 566, 163 S.E. 2d 526 (1968), to support its contentions. This Court, in *Utilities Comm. v. Transport Co.*, 10 N.C. App. 626, 631, 179 S.E. 2d 799, 803 (1971), stated:

"Protestants strongly rely on the case of *Utilities Commission v. Petroleum Transportation, Inc.*, 2 N.C. App. 566, 163 S.E. 2d 526 (1968). The case at hand is clearly distin-

guishable. In the cited case the applicant for a permit to operate as a contract carrier for a specified shipper offered no proof that the shipper had a need for a specific type of service not otherwise available by existing means of transportation; applicant's evidence showed that the only purpose in obtaining the permit was to increase the profits of the applicant; this court held that a finding by the Utilities Commission that the applicant met the test of a contract carrier was not supported by the evidence and the permit was improperly granted. In the case at hand the *need* for the specialized services by Limestone was shown."

We hold that the evidence in the record supports the findings and conclusions reached that Schlitz showed a need for a specific service which was not otherwise available.

The order of the Utilities Commission is

Affirmed.

Judge CLARK concurs.

Judge MARTIN (Robert M.) dissents.

Judge MARTIN (Robert M.) dissenting:

In my judgment the applicant has failed to sustain its burden of proving that the service proposed by applicant is not otherwise available by existing means of transportation. I vote to reverse the order of the Commission.