STATE OF NORTH CAROLINA, EX REL, UTILITIES COMMISSION AND WACHOVIA COURIER CORPORATION v. AMERICAN COURIER CORPORATION

No. 7010UC97

(Filed 24 June 1970)

1. Carriers § 2— contract carrier of bank documents — application for permit — sufficiency of findings

The Utilities Commission properly granted an application for a contract carrier permit which would authorize the applicant to transfer bank documents and other commodities between banks in the state, notwithstanding the protest by an existing contract carrier of bank documents that the granting of the application would adversely affect its business, where there were findings, supported by competent and substantial evidence, that banks needed the services offered by the applicant and that their need could not be met by any existing means of transportation. G.S. 62-262(i).

2. Utilities Commission § 9— review of Commission's findings of fact

APPEAL by protestant, American Courier Corporation, from final order of the North Carolina Utilities Commission dated 5 September 1969.

UTILITIES COMM. *v.* AMERICAN COURIER CORP.

This was a proceeding initiated by the applicant, Wachovia Courier Corporation, by filing with the North Carolina Utilities Commission, on 28 April 1969, an application for contract carrier authority to transport cash letters, commercial papers, documents and records, bank stationery, sales, payroll and other accounting, audit and data processing media, and business, institutional and governmental records between all points and places in North Carolina. Wachovia Courier Corporation (applicant) is a North Carolina corporation organized as a subsidiary of the Wachovia Corporation. The applicant will acquire the assets of the transportation departments of Wachovia Bank and Trust Company, N. A., and of Wachovia Services, Inc., and will own and operate 37 vehicles with initial investment in vehicular equipment of over $80,000. The applicant will serve routes covering almost all of the State of North Carolina and will lease facilities in four locations throughout the State to be used in addition to storage and service facilities at its home office in Winston-Salem, North Carolina. Contracts have been entered with several other banks to provide service through the applicant.

On 13 June 1969 the protestant, American Courier Corporation, filed a Protest and Motion for Intervention. The protestant alleged that it is a contract carrier operating in North Carolina under a permit issued in 1958 which gives it authority to transport the exact commodities that the applicant now seeks authority to transport. The protest alleged that the proposed operations of the applicant do not comply with the requirements of G.S. 62-262(i) and that the proposed operations are not consistent with the public interest and transportation policy of the State.

The matter came on for hearing before the North Carolina Utilities Commission on 12 August 1969, and on 5 September 1969 the Commission entered its order granting the applicant a permit to operate as a contract carrier in the State of North Carolina.

*Edward B. Hipp and Larry G. Ford for the Utilities Commission.*

*James M. Kimzey for the applicant appellee.*

*Allen, Steed and Pullen, by Thomas W. Steed, Jr., for the protestant appellant.*

HEDRICK, J.

[1] The order of the Commission contained the following findings of fact and conclusions:

## "FINDINGS OF FACT

"1.  The Applicant, Wachovia Courier Corporation, is a duly organized North Carolina corporation and subsidiary of the Wachovia Corporation, authorized by its charter to engage in the business of general transportation.

"2.  The proposed operations of Wachovia Courier Corporation conform with the definition of a contract carrier by motor vehicle; will not unreasonably impair the efficient service of carriers operating under certificates or rail carriers; will not unreasonably impair the use of the highways by the general public; and the applicant is fit, willing and able to perform the proposed service as a contract carrier.

"3.  The proposed operation will be consistent with the public interest and the policy declared in Chapter 62 of the General Statutes of North Carolina.

"4.  Applicant, Wachovia Courier Corporation, has entered into bilateral contracts for the proposed services with Bank of Reidsville, Commercial and Farmers Bank, The Planters National Bank and Trust Company, Southern National Bank of North Carolina, First National Bank of Eastern North Carolina, Waccamaw Bank and Trust Company, Wachovia Bank and Trust Company, N.A., and Wachovia Services, Inc.

"5.  The Protestant, American Courier, is a contract carrier by motor vehicle operating under a permit issued by the Utilities Commission under the provisions of G.S. 62-262(h)(i) and performs services in North Carolina as a contract carrier as defined in GS 62-3(8) and GS 62-3(9), and as a contract carrier, does not hold itself out to serve the public generally as a common carrier and is not a carrier operating under a certificate of the Commission within the provisions of GS 62-262(i)(2).

"Based upon the foregoing Findings of Fact, the Commission makes the following:

## "CONCLUSIONS

"We deem it sufficient to recite in this Docket the following language contained in the conclusion of the Order dated August 1, 1969 in Docket No. T-1445, a case almost identical to the present case:

> "'Applicant, First Courier Corporation, has borne the burden of proof that there is a public need by several shippers for the proposed service which conforms to the definition

of a Contract Carrier by Motor Vehicle contained in GS
62-3(8). Bilateral contracts between the applicant and
shippers have been filed in accordance with Commission
Rule R2-15. The Commission is of the opinion and con-
cludes that the applicant has fulfilled the requirements of
the Public Utilities Act and the rules and regulations of
the Commission and is entitled to a contract carrier per-
mit authorizing it to perform the proposed transportation
service.

The Commission has given consideration to the protest of
American Courier and to the testimony offered by Ameri-
can Courier with respect to its operations in North Carolina
and cannot find that the proposed operations of the appli-
cant will improperly or unlawfully interfere with or impair
any rights granted to existing contract carriers under the
Public Utilities Act. Contract carriers holding permits un-
der GS 62-262 are not afforded the same protection in their
permit authority from subsequent applications as the Pub-
lic Utilities Act affords to common carriers operating under
certificates issued under the Public Utilities Act. A com-
mon carrier is given certain protection in its franchise area
consistent with the duty and obligation of the common
carrier to provide service to the public under rates and
charges on file with the Utilities Commission and regulated
by the Utilities Commission. The common carrier must pro-
vide service on call and demand to all of the public at pub-
lished regulated rates and in return for the obligation and
duty to provide such service the common carrier is granted
certain franchise protection of the Public Utilities Act so
long as it is able to adequately serve the public. The con-
tract carrier, on the other hand, is not required to serve
anyone and does not serve anyone except those that it vol-
untarily enters into contracts with for motor carrier ser-
vice. The contract carrier's minimum rates are on file with
the Commission, but it is not required to provide service at
such minimum rates and may decline to enter into a con-
tract except at such rates as it desires to negotiate in any
particular contract.

The Public Utilities Act does not place the same burden
and obligation upon contract carriers as it places upon
common carriers to provide service in their service area
and, by the same token, it does not provide the same fran-
chise protection afforded to common carriers. A protesting

contract carrier is permitted to intervene and its protest
is heard primarily under the provisions of GS 62-262(i)(5)
on the requirement that the Commission give considera-
tion in permit applications to "whether the proposed opera-
tions will be consistent with the public interest and the
policy declared in this chapter."

The Commission has given due consideration to the pro-
posed operations and finds that they are consistent with
the public interest and with the policy declared in the Pub-
lic Utilities Act, i.e., Chapter 62 of the General Statutes.
The Commission concludes that it would not be in the pub-
lic interest to deny the application based upon the desire
of the protestant, American Courier, for protection from
another contract carrier of bank documents in securing au-
thority to engage in similar transportation of bank docu-
ments as a contract carrier. The protection of one contract
carrier of bank documents from any competition when the
contract carrier has no duty and obligation to serve the
public would be contrary to the public interest. The pro-
testant, American Courier, is free to pick and choose the
banks and other customers shipping bank documents which
it desires to serve, and it is free under its permit to offer
its services to selective banks or bank chains to the exclu-
sion of other banks or bank chains. To deny the applicant's
permit for contract authority to contract with such other
banks and similar shippers who do not enter into contracts
with American Courier would be to authorize arbitrary
power of American Courier to confer its services upon such
bank or bank chains as it chooses at unregulated contract
rates and would leave other banks and banking customers
without recourse to for hire motor carrier service as con-
templated under the contract carrier permit authority pro-
vided in the Public Utilities Act.'

"The foregoing language clearly states the Commission's inter-
pretation of the law as applied to the facts of the present case.

"The contention of the protestant that the proposed opera-
tions of the applicant may be in violation of State or Federal
banking laws or policies is not properly raised before this forum.
It is not the function of this commission to determine nor inter-
pret banking law or policy.

"IT IS, THEREFORE,

ORDERED

"That the application of Wachovia Courier Corporation in this docket be and it is hereby approved and that a contract carrier permit be issued to Wachovia Courier Corporation in accordance with Exhibit A attached hereto and made a part hereof.

"IT IS FURTHER

ORDERED

"That service under the contract carrier permit begin when Wachovia Courier Corporation has filed with the Commission evidence of liability insurance coverage, copies of contracts, not heretofore filed, containing rates and charges which shall be not less than the rates and charges approved or prescribed by the Commission for common carriers performing similar service, and has otherwise complied with the rules and regulations of the North Carolina Utilities Commission all of which shall be done within 60 days from the date of this order."

The evidence at the hearing tended to show that Wachovia Courier Corporation is a North Carolina corporation organized in May, 1969, as a wholly-owned subsidiary of the Wachovia Corporation. Until the formation of Wachovia Courier Corporation, Wachovia Bank and Trust Company, N. A., operated a private courier system by which it transported various commodities between the parent bank and its branches and between Wachovia Bank and Trust Company and its correspondent banks throughout the State.

W. Brooks Mewborn, President of Wachovia Courier Corporation, testified as to the operation of the bank's carrier operation and as to the operation of the applicant. He testified that the applicant has an initial capitalization of $200,000 with which to begin business and that the initial investment in vehicles and equipment would exceed $80,000. Wachovia Courier Corporation was formed, according to his testimony, because the operation of the private courier service was becoming too large and complex to be efficiently maintained and it was felt that it could best be operated as an independent subsidiary of the parent corporation. Mr. Mewborn testified that a great deal of difficulty had been experienced in obtaining suitable transportation for this type of material, and that no common carrier transportation was available in North Carolina to provide this type of service. He testified that the only contract carrier operating in North Carolina in any way able to provide the specific service which the applicant sought authority to provide was American Courier Corporation, but that the bank had encountered many problems in dealing with American Courier, and that the ser-

vice offered by the protestant was not adequate to meet the needs of the banks to be served by Wachovia Courier Corporation. He stated that the service provided by American Courier is mostly "an 'in-conjunction' type service" which means that any service provided one customer must be in conjunction with service provided to another and that this prevents American Courier from having much flexibility and "results in an inability to consistently reach all the computer centers of the customers on time as required to process work." Further, according to the testimony of Mr. Mewborn, the situation becomes worse when Wachovia has a breakdown in its computer centers. He testified that on several occasions this had happened and as the work was not ready for delivery until after American Courier's scheduled time of departure, the delivery was passed up and was left to Wachovia to deliver to the proper destination. According to his testimony, these breakdowns caused them to have to use 508 extra carrier hours in the preceding three months. Mr. Mewborn testified that he had on several occasions contacted American Courier in an effort to obtain this service, but that the protestant was unable to provide the service requested either because American Courier's schedule would not meet the bank's needs, or American Courier did not operate or provide the service in that part of the State.

Burnice W. Nash, Vice President and Branch Coordinator of the First National Bank of Eastern North Carolina, testified that his bank had a need for the specific service to be offered by the applicant, and that so far as he knew no common carrier service is available to fulfill their needs, and that his bank entered into a contract with the applicant because American Courier's schedule of service was not suitable to meet their specific needs.

Hector MacLean, President of Southern National Bank of North Carolina, a witness for the applicant, testified that his bank had a need for the specific transportation service to be provided by the applicant and that this service was not otherwise available by either common carrier or contract carrier at the present time. Mr. Mac-Lean testified that the transportation service offered by American Courier was not satisfactory "due to routes and also price".

American Courier offered testimony in the person of John Sinnott, Regional Vice-President, that his corporation operates in North Carolina under a permit granted in 1958 by the Utilities Commission which authorizes the transportation of the same type of commodities sought to be transported by the applicant. Mr. Sinnott went into considerable detail as to the operations of the protestant

in this State. He testified that American Courier is an independent, regulated carrier engaged solely in the transportation business and that they cannot offer banking services or computer processing services to tie in with the transportation. He testified that this was "trapping of traffic" and denied his corporation an opportunity to be competitive in the field. He testified that the position of his company is not that no other contract carrier should be authorized to conduct business but that he felt they were entitled to be protected from what they consider unfair competition.

G.S. 62-262(i) sets forth six factors to be considered by the Utilities Commission when it passes on an application for a permit as a contract carrier. They are:

"(1)   Whether the proposed operations conform with the definition in this chapter of a contract carrier,

"(2)   Whether the proposed operations will unreasonably impair the efficient public service of carriers operating under certificates, or rail carriers,

"(3)   Whether the proposed service will unreasonably impair the use of the highways by the general public,

"(4)   Whether the applicant is fit, willing and able to properly perform the services proposed as a contract carrier,

"(5)   Whether the proposed operations will be consistent with the public interest and the policy declared in this chapter; and

"(6)   Other matters tending to qualify or disqualify the applicant for a permit."

G.S. 62-3(8) defines a contract carrier as:

". . . any person which, under an individual contract or agreement with another person and with such additional persons as may be approved by the Utilities Commission, engages in the transportation other than the transportation referred to in subdivision (7) of this section, by motor vehicle of persons or property in intrastate commerce for compensation, except as exempted in G.S. 62-260."

In addition to the statutory requirements set forth above, an applicant for a permit to operate as a contract carrier in North Carolina must conform to the standards set forth by the Utilities Commission in Rule R2-15(b). *Utilities Comm. v. Petroleum Transportation, Inc.,* 2 N.C. App. 566, 163 S.E. 2d 526 (1968). Rule R2-15(b) provides:

"If the application is for a permit to operate as a contract carrier, proof of a public demand and need for the service is not required; however, proof is required that one or more shippers or passengers have a need for a specific type of service not otherwise available by existing means of transportation, and have entered into and filed with the Commission, prior to the hearing or at the time of the hearing, a written contract with the applicant for said service which contract shall provide for rates not less than those charged by common carrier for similar service."

The protestant contends that the Commission did not set forth findings and conclusions and reasons or bases therefor upon all the material issues of fact, law, or discretion presented in the record and that the order entered by the Commission was erroneous as a matter of law and unsupported by competent, material and substantial evidence in view of the entire record.

[2] It is basic law that on appeal to a reviewing court, findings of fact made by the Commission are conclusive and binding if they are supported by competent, material, and substantial evidence in view of the record as a whole. *Utilities Comm. v. Petroleum Transportation, Inc., supra; Utilities Commission v. Radio Service, Inc.,* 272 N.C. 591, 158 S.E. 2d 855 (1968); *Utilities Commission v. Champion Papers, Inc.,* 259 N.C. 449, 130 S.E. 2d 890 (1963); *Utilities Commission v. Towing Corp.,* 251 N.C. 105, 110 S.E. 2d 886 (1959); *Utilities Commission v. R. R.,* 238 N.C. 701, 78 S.E. 2d 780 (1953). It is our opinion that the Commission did make sufficient findings and conclusions as to all the material issues of fact and of law, and that the facts found are supported by competent, material and substantial evidence. The Commission, in its order, set forth the evidence presented at the hearing, which evidence showed that the applicant, Wachovia Courier Corporation, was seeking to gain authority to operate as a contract carrier by permit in the State of North Carolina and that a need existed for the specific service offered by the applicant. Several witnesses testified that they had entered contracts with the applicant in behalf of their banks and that they were unable to obtain the specific service from any existing means of transportation.

[1] The protestant, American Courier Corporation, bases much of its opposition to the granting of the permit to the applicant on the ground that if the permit were granted it would then have competition in the area of transportation. Protestant contends that such competition should not be allowed since the granting of the pro-

posed application would adversely affect the business of American Courier. We do not feel that this is a sufficiently compelling reason to prohibit the entrance of other contract carriers into the field of transporting bank documents and other commodities. In *Utilities Commission v. Coach Co.*, 261 N.C. 384, 134 S.E. 2d 689 (1964), our Supreme Court, speaking through Moore, J., said: "There is no public policy condemning competition as such in the field of public utilities; the public policy only condemns unfair or destructive competition." This Court, in the recent case of *Utilities Comm. v. Petroleum Carriers*, 7 N.C. App. 408, 173 S.E. 2d 25 (1970), citing the above passage from the *Coach Co.* case, stated: "The possibility that a transfer of authority to a more competitive carrier will adversely affect existing carriers does not make such a transfer contrary to 'the public interest' as a matter of law." So, too, in the present case, the Utilities Commission's action in authorizing the granting of the permit to the applicant does not denominate the competition generated by that action unfair or against the "public interest". The testimony contained in the voluminous record indicates that the field of commodity transportation is still open and has not been closed out by the granting of this permit.

For the reasons given in the above opinion, the order of the North Carolina Utilities Commission granting Wachovia Courier Corporation's application for a permit authorizing it to transport bank commodities is

Affirmed.

MALLARD, C.J., and PARKER, J., concur.