STATE OF NORTH CAROLINA EX REL., UTILITIES COMMISSION, AND ARLIVE JACKSON SCOGGINS D/B/A AJS TRUCKING COMPANY, APPLICANT v. M. L. HATCHER PICKUP & DELIVERY SERVICES, INC., PROTESTANT

No. 7910UC171

(Filed 20 November 1979)

**Carriers § 2.7— contract carrier authority—sufficiency of evidence and findings**

    The evidence and the findings of the Utilities Commission supported the Commission's order granting an application for contract carrier authority to transport beer and malt liquor products from a brewery in Eden to a distributor in Salisbury.

APPEAL by protestant from the North Carolina Utitlies Commission. Final order entered 18 December 1978. Heard in the Court of Appeals on 18 October 1979.

This proceeding was instituted by the applicant, Arlive Jackson Scoggins, d/b/a AJS Trucking Company [hereinafter referred to as AJS] when it filed with the North Carolina Utilities Commission [the Commission, hereinafter], on 9 March 1978, an application for contract carrier authority to transport by motor vehicle beer and other malt liquor products between precisely designated points in North Carolina. The applicant stated that its specific intent was

    to transport for the benefit of Rowan Distributing Company, Inc., with whom [it] holds a contract to transport beer and malt liquor products manufactured by Miller Brewing Com-

pany, Eden, North Carolina, to one (1) destination, being Salisbury, North Carolina. Applicant will pick up returns, pallets, empties and kegs, returning items back to Miller Brewing Company, with no charge for this service.

Applicant proposed to be the sole owner and to control completely the planned transportation business. Through exhibits, Mr. Scoggins demonstrated that he owned three tractors and six trailers, and, additionally, that he operated four more trailers "on a lease-purchase agreement in which he has substantial equity".

On 21 March 1978 the protestant, M. L. Hatcher Pickup & Delivery Services, Inc. [hereinafter Hatcher], filed a Protest and Motion for Intervention, alleging that it "is an irregular route, common carrier of property by motor vehicle, operating in North Carolina, intrastate commerce," under a certificate issued by the Commission in January, 1977. The operating authority thereby granted was, in pertinent part, as follows:

IRREGULAR ROUTE COMMON CARRIER AUTHORITY

. . .

(2) Transportation of general commodities, except those requiring special equipment . . .

(a) Between all points and places within a radius of 75 miles of Eden.

(b) Between Eden on the one hand and Charlotte on the other.

. . .

The protest further alleged that Hatcher had been granted temporary authority on 27 February 1978 to transport malt beverages from Miller Brewing Company in Eden, and to carry "related materials, supplies, and equipment" back to Miller, from various North Carolina points. Protestant contended that the service proposed by AJS did not meet the requirements of G.S. § 62-262(i); that a grant of authority to AJS would infringe upon the authority already granted it [Hatcher]; and that it was entitled to "protection from unreasonable impairment of its service by contract carriers".

The matter came on for hearing before the Commission on 8 December 1978, and on 18 December 1978 the Commission entered its order granting the applicant a permit to operate as a contract carrier to and from the facilities of Miller Brewing Company in Eden, and Rowan Distributing Company in Salisbury. Protestant appealed.

*Kimzey, Smith. & McMillan, by James M. Kimzey, for the applicant appellee.*

*Bailey, Dixon, Wooten, McDonald & Fountain, by Ralph McDonald and Gary S. Parsons, for the protestant appellant.*

HEDRICK, Judge.

Relevant evidence presented at the hearing is summarized as follows:

AJS presently is authorized by the Commission to pick up beer and beer products from the Schlitz Brewery in Winston-Salem, North Carolina, and to deliver the same to five North Carolina points: Northwestern Distributors in North Wilkesboro, Proctor Wholesalers in Hickory, Lillard Enterprises in Reidsville, Piedmont Distributors in Salisbury, and Rudisill Enterprises in Gastonia. Its trucks always "end up" in Salisbury since deliveries are made to the most distant points first. Under this operation applicant transports a full load from Winston-Salem to Reidsville, but then must "deadhead", or come back empty, to Salisbury. Thus, its proposal to transport under contract from Miller Brewery in Eden to Rowan Distributors in Salisbury would "enhance" AJS operations in that, after delivering to Reidsville, the AJS trucks could make the ten-mile run over to Eden, pick up a full load at Miller Brewery, and then head to Salisbury.

In addition to benefitting its own operation, Scoggins testified that AJS provides certain specialized services for beer shippers. For instance, "load locks" are used on every trailer, that is, locks are placed across the back of each load to secure it and keep it from shifting. Moreover, AJS has agreed with Rowan Distributing to provide a "double lock key system" so that AJS will be able to make deliveries at times when the plant is unmanned with little risk of loss to Rowan. Under such a system, AJS would maintain a master padlock on its trailers while Rowan

would keep a lock on the fence surrounding its plant. Scoggins described the operation of this system thusly:

Each party has keys so that we can get in and drop the trailers, and they can unload the trailers at their convenience. We are able to come in and spot trailers at night and be on our way without leaving someone there. We will pick up an empty trailer at the time we drop the loaded trailer. There will be one trailer at the distributor at all times.

A unique service offered by AJS, according to Scoggins, consists of the use of "fillers to separate double-row loads so that they are, in effect, in single rows." The fillers were developed by Scoggins as a means of preventing damage because, in his opinion, "[i]t is a special service when you haul malt beverages, [and] most common carriers don't have knowledge of the way to secure loads to prevent damage."

Finally, Scoggins can offer personalized service to Rowan. He testified that he bases his business in Salisbury and has known the personnel at Rowan Distributing since 1960. He and his employees know a number of the Rowan employees by name and address so that, if an emergency situation arises, it can be readily resolved.

Additional support for the AJS application came from the testimony of William A. Roberts, General Manager of Rowan Distributing and Freida Weisler, Rowan's president. Roberts testified that his company is not involved, and does not wish to be involved, in the business of transporting its malt beverages. None of its present transportation is handled by common carriers, and there have been no common carrier shipments to it from the Miller Brewery in Eden. According to Roberts, Rowan's greatest concern in this matter is finding a carrier "that will give us as much protrection and as good service as we would get if we did it outselves." He stated that their concern regarding security precautions made it desirable for them to know personally "whoever will be driving the rig . . . [and] who will haul our product." AJS meets their needs in that respect since Rowan has been doing business with Scoggins for more than 15 years. Moreover, Roberts asserted that AJS could more adequately meet Rowan's security needs because of its specialized handling of malt liquor products. To the contrary, "[w]e would not be comfortable con-

tracting with somebody who carries primarily some other commodity." The "double lock key system" is especially attractive to Rowan, Roberts testified, because furnishing keys to its padlocked fence to an AJS driver would be reasonable, while handing out "150 keys to satisfy the needs of a common carrier" would put Rowan in an "uncomfortable" security position.

Rowan president, Mrs. Weisler, offered further support for the AJS application, asserting that the specialized security and damage-preventive services available from AJS, as well as the personal contact she had with Scoggins, better fulfilled the shipping needs of her company. She testified that her experience in shipping beer by common carrier had been unpleasant "due to excess damage" to shipments, and that one incident had resulted in a lawsuit which had been pending for 16 months. In her opinion, a common carrier could not meet the needs of Rowan.

In protest to the AJS application, Hatcher offered the testimony of its vice president, Austin Hatcher, Jr., who testified that his company was on the list of approved carriers for Miller Brewing Company; that it had been granted temporary authority from the Commission to transport beer products from Miller Brewery in Eden; and that Hatcher is presently providing service to other Miller distributors in North Carolina in accordance with its grant of temporary authority. With reference to Hatcher's security system, Hatcher admitted that his company did not secure the shipments "with anything." Rather, Miller personnel load the trucks and "seal" the shipments. Furthermore, Hatcher does not provide locks for shipments, "though we can and would, if requested." Hatcher drivers have experience with handling malt beverages, but that experience is limited for the majority of them, since approximately 50 percent of Hatcher's business consists of hauling mail. The remainder is devoted to general commodities.

Hatcher admitted that neither he nor his drivers personally knew any of the Rowan personnel and that, in an emergency situation, they might not be able to get in touch with the appropriate employees. However, it is Hatcher's practice to obtain such information once he starts serving a particular customer. In his opinion,

I do not know of any services that can be provided by Mr. Scoggins that we, as a common carrier, can't provide to Rowan Distributing . . . . Mr. Scoggins' proposed operations would duplicate operations our company is authorized to perform . . . . We can offer the exact service that has been specified by Mr. Scoggins . . . .

The final order of the Commission contains the following findings of fact and conclusions:

### FINDINGS OF FACT

1. The Applicant, located in Salisbury, North Carolina, proposes to engage in the transportation of beer and malt beverages from the facilities of Miller Brewing Company, Eden, North Carolina, under a written bilatoral [sic] contract with Rowan Distributing Company, also located in Salisbury, North Carolina.

2. Since 1975 the Applicant has held a contract carrier permit issued by this Commission for the transportation of beer and malt beverages from the Schlitz Brewery in Winston-Salem, North Carolina, to distributors located in North Wilkesboro, Hickory, Gastonia, Salisbury and Reidsville, North Carolina.

3. The Applicant has acquired a special expertise in the transportation of beer and malt beverages and has developed techniques for safe and efficient service.

4. The Applicant was formerly a customer of Rowan Distributing Co. and knows a number of its employees personally.

5. Rowan Distributing Company has determined that its business needs can best be met through the transportation services offered by the Applicant, to wit: security and control of shipments, personal knowledge and trust of the driver, assurance of protection against damage in transit.

6. The sole Protestant to the Application is a common carrier of general commodities and of beer and malt beverage products. Protestant also operates under a contractual arrangement with the U.S. Postal Service which constitutes approximately 50 percent of its business.

7. Protestant currently handles about three loads per day for the distribution of its serving from the Eden plant and expects this to increase to 30 loads per day. Protestant has constructed a large terminal adjacent to the Miller facilities.

8. Output is projected to exceed eight million barrels per day when the Eden plant is at full production. Rowan expects to receive some 30 truckloads of beer a week.

Whereupon the Hearing Examiner reaches the following

## CONCLUSIONS

1. That the proposed operations conform with the definition of a contract carrier as set forth in G.S. 62-3(8).

2. That the Applicant is fit, willing and able to properly perform the service proposed as a contract carrier.

3. That the proposed operations will not unreasonably impair the efficient public service of carriers operating under certificates or rail carriers.

4. That the proposed service will not unreasonably impair the use of the highways by the general public.

5. That the proposed operations will be consistent with the public interest and policy declared in Chapter 62 of the General Statutes.

6. That the Applicant has met the burden of proof prescribed by statute and that the application should be granted.

IT IS, THEREFORE, ORDERED as follows:

1. That Arlive Jackson Scoggins, d/b/a AJS Trucking Company, Inc., be, and is hereby, granted additional contract carrier authority in accordance with Exhibit A attached hereto and made a part hereof.

2. That Arlive Jackson Scoggins shall institute operations under the authority herein acquired within thirty (30) days from the date this order becomes final.

3. That this Order, upon becoming final, shall constitute a permit until a formal permit has been issued to the Applicant.

On appeal, the protestant first contends that, in granting contract carrier authority to AJS over its protest, the Commission failed to find sufficient facts to support its conclusion that the applicant's proposed operations conform to the definition of a contract carrier, and, secondly, that the order entered by the Commission is unsupported by competent, material and substantial evidence of record.

Protestant's first argument presents for our consideration G.S. § 62-262(i)(1), which provides in pertinent part:

If the application is for a permit, the Commission shall give due consideration to:

(1) Whether the proposed operations conform with the definition in this chapter of a contract carrier, . . .

G.S. § 62-3(8) defines a contract carrier as follows:

[A]ny person which, under an individual contract or agreement with another person and with such additional persons as may be approved by the Utilities Commission, engages in the transportation . . . , by motor vehicle of persons or property in intrastate commerce for compensation, . . .

Pursuant to its rulemaking authority, G.S. § 62-31, the Commission has supplemented these statutory provisions to require, under Rule R2-15(b), that an applicant for contract carrier authority conform to the following standards:

If the application is for a permit to operate as a contract carrier, proof of a public demand and need for the service is not required; however, proof is required that one or more shippers . . . have a need for a specific type of service not otherwise available by existing means of transportation, . . .

*Cf. State ex rel. Utilities Commission v. Petroleum Transportation, Inc.*, 2 N.C. App. 566, 163 S.E. 2d 526 (1968).

It is a cardinal principle of law that the Commission's findings of fact are conclusive and binding on a reviewing court if they are supported by competent, material and substantial

evidence in view of the entire record. G.S. § 62-94; *State ex rel. Utilities Commission v. Carolina Coach Co.*, 269 N.C. 717, 153 S.E. 2d 461 (1967); *State ex rel. Utilities Commission v. Kenan Transport Co.*, 10 N.C. App. 626, 179 S.E. 2d 799 (1971). In the present case, the Commission, in its order, set forth the evidence adduced at the hearing which showed that the applicant was able to provide specialized services not otherwise available, and that a need existed for such services. Moreover, the Commission found as a fact that such a need existed, specifying in detail the reasons therefor and concluding therefrom that the applicant met the statutory definition of a contract carrier. *Cf. State ex rel. Utilities Commission v. American Courier Corp.*, 8 N.C. App. 358, 174 S.E. 2d 814, *cert. denied*, 277 N.C. 117 (1970).

Reviewing the evidence in the record as a whole, we are of the opinion that it is plenary to support the Commission's findings and conclusions, and that the findings and conclusions are sufficient to resolve all material issues of fact and law. For these reasons, we affirm the order of the Commission granting contract carrier authority to AJS to transport beer and malt liquor products from Miller Brewery in Eden to Rowan Distributing in Salisbury.

Affirmed.

Judges CLARK and MARTIN (Harry C.) concur.