*DOCKET NO. T-1287, SUB. 28* STATE OF NORTH CAROLINA, EX REL UTILI-
    TIES COMMISSION AND EASTERN OIL TRANSPORT, INC., COMPLAIN-
    ANT, (AND KENAN TRANSPORT COMPANY, O'BOYLE TANK LINES, INC., M & M
    TANK LINES, INC., BLACK'S MOTOR EXPRESS, INC., PETROLEUM TRANSPORTATION,
    INC., TERMINAL CITY TRANSPORT, INC., A. C. WIDENHOUSE, INC. AND EAST COAST
    TRANSPORT, INC.) (COMPLAINANTS) APPELLEES v. UNITED TANK LINES,
    INC. AND S. H. MITCHELL AND SON (DEFENDANTS) APPELLANTS

*DOCKET NO. T-1673, SUB. 1* STATE OF NORTH CAROLINA, EX REL UTILI-
    TIES COMMISSION, SHOW CAUSE PROCEEDING BY COMMISSION, AP-
    PELLEE v. UNITED TANK LINES, INC. APPELLANT

*DOCKET NO. T-1673, SUB. 2* STATE OF NORTH CAROLINA, EX REL UTILI-
    TIES COMMISSION, PETITION FOR AUTHORITY TO SELL AND
    TRANSFER CONTROLLING OUTSTANDING AND ISSUED CAPITAL
    STOCK OF UNITED TANK LINES, INC. FROM ROY C. HARRISON TO S. H.
    MITCHELL AND W. N. MITCHELL (APPLICANTS) APPELLANTS v. KENAN
    TRANSPORT COMPANY, O'BOYLE TANK LINES, INC.; M & M TANK
    LINES, INC., BLACK'S MOTOR EXPRESS, INC.; PETROLEUM
    TRANSPORTATION, INC., TERMINAL CITY TRANSPORT, INC.; A. C.
    WIDENHOUSE, INC.; EAST COAST TRANSPORT, INC. AND EASTERN
    OIL TRANSPORT, INC. (PROTESTANTS) APPELLEE

No. 7710UC74

(Filed 7 December 1977)

Carriers §§ 2.10, 3— transfer of control of common carrier without approval—ob-
    taining franchise for transfer to another—revocation of operating authority

> The Utilities Commission properly denied an application for approval of a
> transfer of control of a common carrier and properly revoked the carrier's
> operating authority on grounds that the common carrier franchise was ob-
> tained by the proposed transferor for the purpose of transferring it to another
> in violation of G.S. 62-111(d) and that control of the carrier had been trans-
> ferred without prior application to and approval by the Utilities Commission in
> violation of G.S. 62-111(a). G.S. 62-112(b).

APPEAL by respondents from order of the North Carolina
Utilities Commission entered 21 October 1976. Heard in the Court
of Appeals 26 October 1977.

This cause was before the North Carolina Utilities Commis-
sion (Commission) to determine if the operating authority of
respondent United Tank Lines, Inc. (United), should be revoked.
The various proceedings before and by the Commission are sum-
marized in pertinent part as follows:

On 19 February 1975 a complaint was filed by E. C. Brooks, III, attorney for Eastern Oil Transport, Inc. (Eastern), alleging that United is operating illegally, or that W. N. Mitchell and son (S. H. Mitchell) are operating illegally under the rights of United, and asking for a hearing on the complaint.

On 7 March 1975 Kenan Transport Company filed a motion asking that it be allowed to intervene. On 4 April 1975 O'Boyle Tank Lines, Inc., M & M Tank Lines, Inc., Black's Motor Express, Inc., Petroleum Transportation, Inc., Terminal City Transport, Inc., A. C. Widenhouse, Inc., and East Coast Transport, Inc., filed motions asking that they be allowed to intervene.

On 15 April 1975 respondents filed a motion asking that United's complaint be dismissed. On 10 July 1975 the Commission denied the motion.

On 17 April 1975 the Commission entered an order requiring United, S. H. Mitchell and W. N. Mitchell (sometimes herein referred to as respondents) to appear and show cause why United's operating authority should not be revoked for failure to apply for and obtain approval of the Commission of change of control of United, pursuant to G.S. 62-111; also, why the Commission should not seek the penalty provided by G.S. 62-310 against respondents Mitchell for violation of Article 62 of the General Statutes.

Also on 17 April 1975 the Commission entered an order consolidating Docket No. T-1673, Sub. 1, and Docket No. T-1287, Sub. 28, for investigation, further hearing and decision.

On 11 June 1975 R. C. Harrison, as owner of 76 shares of United stock, and respondents Mitchell, as the owners of the other 74 of the 150 shares of United, filed a petition asking that the Commission approve the transfer of Harrison's 76 shares to respondents Mitchell.

On 27 June 1975 the firms named above, except United, filed a joint "PROTEST AND MOTION TO INTERVENE" protesting the transfer of United's stock and asking that they be allowed to intervene as party protestants.

A hearing was conducted by Hearing Examiner Robert F. Page on 10 July 1975 and on certain dates thereafter. Documentary evidence and testimony were presented after which, on 9

---

---

June 1976, Examiner Page filed a recommended order summarized in pertinent part as follows:

The order recites a history of the two dockets consolidated for hearing and determination. It recites that Docket No. T-1673 was a joint application, filed with the Commission on 31 August 1973, by which one F. T. Loftin and United sought authority to transfer the ownership of Common Carrier Certificate No. C-253 from Loftin to United. The present protestants were protestants in that docket. In a hearing on 31 January 1974 Roy C. Harrison alleged that he and his wife were the sole owners of all of United's stock and that they intended to operate United as their family business if the Commission approved the transfer of authority. On 8 April 1974 a final order was entered approving the transfer. During a hearing on 9 October 1974 in Docket No. T-825, Sub. 185, there was evidence tending to show that Harrison and wife were no longer operating United as a family business, but that United was owned and operated by respondents Mitchell. No application for approval for a change of control of United had been filed with the Commission as required by G.S. 62-111(a).

The hearing examiner found facts summarized in pertinent part as follows:

United is the holder of Common Carrier Certificate No. C-253 which was obtained from the previous holder, Loftin, pursuant to an order of the Commission which became effective on 8 April 1974. The original controlling interest in United was held by Roy C. Harrison by virtue of his ownership of all of the 150 shares issued by United on or about 17 September 1973. However, said shares were not lawfully issued in that the certificate was not properly signed by the corporation's officers as required by G.S. 55-57(b).

On 11 June 1974, without notice or application to the Commission, Harrison entered into a contract with respondents Mitchell by the terms of which 74 of the 150 shares of United were sold by Harrison to respondents Mitchell and they were given an option for one year within which to purchase the remaining 76 shares of United. On 14 June 1974 the original certificate for 150 shares issued to Harrison was cancelled and new certificates were issued whereby Harrison received 76 shares and respondents

Mitchell jointly received 74 shares. As was true with the original certificate, these certificates failed to comply with the provisions of G.S. 55-57(b).

On 11 June 1974 Mrs. Harrison and Ben O'Dell resigned as directors of United and respondents Mitchell were elected to replace them; respondents Mitchell thereupon became a majority of United's three-man board, with Roy Harrison as the third member.

The original bank account for United was opened on or about 15 March 1974 in the amount of $10,000; said funds were obtained from the depository bank by means of a note signed by defendant S. H. Mitchell. Neither Roy C. Harrison nor his wife has ever signed any of United's checks; many of the checks were signed by respondent S. H. Mitchell despite the fact that he was never properly authorized by the corporation so to do. Many more were signed by W. N. Mitchell despite the fact that he was not authorized to do so until 11 June 1974.

Between 1 April 1974 and 21 April 1975 respondent S. H. Mitchell wrote checks from his own personal account payable to United in the amount of $128,450; respondent W. N. Mitchell wrote checks from his personal account payable to United in the amount of $5,475. Respondent S. H. Mitchell holds title to all of the revenue equipment used by United despite the fact that the equipment is listed on the books of United. United makes some of the monthly payments on the financing of the equipment and respondent S. H. Mitchell is personally liable on the notes securing the balance due on the equipment.

Respondent S. H. Mitchell owns the lands and buildings used by United as a terminal. United continues to make monthly payments on the building despite the fact that the land and buildings have been removed from the books of United.

As of 31 May 1975 respondent S. H. Mitchell had made contributions of $209,115.77 to the capital of United. Harrison personally paid $15,000 for the rights being used by United but said funds were never paid into the corporation. Harrison has made no other contributions to United although the corporation suffered losses in excess of $100,000 between March of 1974 and May of 1975.

The $20,000 which Harrison testified in Docket No. T-1673 represented cash paid for stock of United was never paid into the corporation; instead, $15,000 was paid directly to Loftin by Harrison and the other $5,000 has never been traced to the corporation. The price agreed to be paid to Harrison by respondents Mitchell for his shares of United is $15,000, the same amount which Harrison paid to Loftin for the operating rights of United. Harrison never sought purchase offers from anyone other than respondents Mitchell.

Harrison has never played an active role in the operation of United; the corporation employs drivers, a dispatcher, a secretary and an accountant all hired by respondents Mitchell; the Mitchells have been controlling and managing the corporation from its beginning. Respondent W. N. Mitchell supervises the dispatcher and mechanics and S. H. Mitchell makes the policies and determines the overall conduct of operations.

Substantial intermingling of funds has taken place between respondents Mitchell and United. (The order sets forth nine specific instances.)

If only the monies in the S. H. Mitchell contributed capital account were treated as equity of United, said Mitchell would thereby control in excess of 90 percent of the common equity of the corporation. The authority represented by Certificate No. C-253 has been operated continuously since its transfer from Loftin to United.

The proposed transferees (respondents Mitchell) are not fit, willing and able to perform service to the public under Common Carrier Certificate C-253. The proposed transfer is not in the public interest. The franchise was obtained by Harrison for the purpose of transferring it to respondents Mitchell.

Based upon the findings of fact the hearing examiner concluded that control of United was transferred from Harrison to respondents Mitchell on or before 11 June 1974 without prior application to and approval by the Commission as required by G.S. 62-111(a); that Harrison obtained said Common Carrier certificate from Loftin for the purpose of transferring the franchise to respondents Mitchell; and that, for willful failure to comply with the provisions of G.S. 62-111(a), Certificate No. C-253 should be revoked.

The hearing examiner ordered that the application for approval of the transfer of control of United from Harrison to respondents Mitchell be denied and that the authority previously granted under Common Carrier Certificate C-253 be revoked.

Respondents filed exceptions to the recommended order. On 21 October 1976, following a hearing on the exceptions conducted on 10 August 1976, the Commission entered an order overruling the exceptions and adopting as its final order the recommended order issued by Hearing Examiner Page.

Respondents appealed.

*Commission Attorney Edward B. Hipp and Assistant Commission Attorney Theodore C. Brown, for North Carolina Utilities Commission, appellee.*

*Allen, Steed, and Allen, by Thomas W. Steed, Jr., and Arch T. Allen III, for Kenan Transport Company, O'Boyle Tank Lines, Inc., Black's Motor Express, Inc., Petroleum Transportation, Inc., Terminal City Transport, Inc., A. C. Widenhouse, Inc., and East Coast Transport, Inc., appellees.*

*Eugene C. Brooks III, for Eastern Oil Transport, Inc., appellee.*

*Vaughan S. Winborne for appellants.*

BRITT, Judge.

While respondent-appellants argue 12 questions in their brief, we think the disposition of this appeal rests on the answers to two questions: (1) Did the Utilities Commission err in its findings of fact? (2) Was the action taken by the Commission pursuant to the findings authorized? We answer the first question in the negative and the second question in the affirmative.

It is settled in this jurisdiction that findings of fact by the Utilities Commission are conclusive and binding on appeal when supported by competent, material and substantial evidence in view of the entire record. *State ex rel. Utilities Commission v. City of Durham*, 282 N.C. 308, 193 S.E. 2d 95 (1972); *State ex rel. Utilities Commission v. Petroleum Transportation, Inc.*, 2 N.C. App. 566, 163 S.E. 2d 526 (1968). It suffices to say that we have carefully reviewed the record and conclude that the findings of

fact made by the Commission are supported by competent, material and substantial evidence. Thus, we hold that the Commission did not err in its findings.

G.S. 62-111(a) provides:

"No franchise now existing or hereafter issued under the provisions of this Chapter other than a franchise for motor carriers of passengers shall be sold, assigned, pledged or transferred, *nor shall control thereof be changed through stock transfer or otherwise*, or any rights thereunder leased, nor shall any merger or combination affecting any public utility be made through acquisition or control by stock purchase or otherwise, *except after application to and written approval by the Commission*, which approval shall be given if justified by the public convenience and necessity. Provided, that the above provisions shall not apply to regular trading in listed securities on recognized markets." (Emphasis ours.)

The Commission's findings and conclusions that *control* of United was transferred from Harrison to respondents Mitchell on or before 11 June 1974, without prior application to and approval by the Commission, are fully supported by the evidence and the findings of fact. Transfer of control of United was tantamount to transfer of control of the franchise represented by Common Carrier Certificate No. C-253.

G.S. 62-111(d) provides: "No person shall obtain a franchise for the purpose of transferring the same to another, and an offer of such transfer within one year after the same was obtained shall be prima facie evidence that such certificate or permit was obtained for the purpose of sale."

The Commission's conclusion that Certificate C-253 was acquired by Harrison for purpose of transferring the same to another is fully supported by the evidence and findings of fact.

G.S. 62-112(b) provides in pertinent part: "Any franchise . . . , after notice and hearing, may be suspended or revoked, in whole or in part, upon complaint, or upon the Commission's own initiative, for wilful failure to comply with any provision of this Chapter . . . ."

We hold that the Commission was fully authorized to deny the application of Harrison and respondents Mitchell for approval

of the transfer of control of United, and to revoke Common Carrier Certificate C-253.

For the reasons stated, the order appealed from is

Affirmed.

Judges PARKER and VAUGHN concur.