In the Matter of DAN DUGAN TRANS-
PORT COMPANY, and Northern Tank
Line, Complainants and Appellees,

Matador Service, Inc., Suhr Transport
Company, Skjonsby Truck Line, Law-
rence Transportation, Getter Trucking,
Inc., Transport, Inc. and Indianhead
Truck Line, Inc., Intervenors and Appel-
lees,

and

Public Service Commission, State of
North Dakota, Appellees,

v.

MAAS TRANSPORT, INC., and Carl J.
Austad & Son, Inc., Respondents
and Appellants.

Civ. No. 9522.

Supreme Court of North Dakota.

Feb. 1, 1979.

Wheeler, Wolf, Wefald & Peterson, Bis-
marck, for complainant and appellee, Dan
Dugan Transport Co., and intervenors and
appellees, Matador Service, Inc., and Suhr
Transport Co.; argued by R. W. Wheeler,
Bismarck.

Alan Foss and Kip B. H. Erickson, Fargo,
for complainant and appellee, Northern
Tank Line, and intervenor and appellee,
Skjonsby Truck Line.

McIntee & Whisenand, Williston, for in-
tervenors and appellees, Lawrence Transp.
and Getter Trucking, Inc.; submitted on
the brief by Frederick E. Whisenand, Willi-
ston.

Ronald B. Pitsenbarger, Moorhead, Minn.,
for intervenors and appellees, Transport,
Inc. and Indianhead Truck Line, Inc.; sub-
mitted on the brief.

David W. Tiistola, Special Asst. Atty.
Gen., Public Service Commission, Bismarck,
for appellee, Public Service Commission.

T. L. Secrest, Hettinger, for respondents
and appellants.

ERICKSTAD, Chief Justice.

Maas Transport, Inc. (Maas) and C. J. Austad and Son, Inc. (Austad) appeal from a district court order that affirmed the Public Service Commission's order to revoke Maas' Special Common Motor Carrier Certificate on the grounds of abandonment. We affirm.

Maas had authority to operate in this state from the Public Service Commission (PSC) pursuant to Special Motor Carrier Certificate No. 251.[1] In the early 1960's, Maas was an active carrier, owning and operating over 30 tractors and 40 trailers. Business had declined in recent years, however, to an occasional truck hauling cattle, cement, or a trailer house. On June 13, 1977, the PSC approved the lease of one truck by Maas from Austad.

Dan Dugan Transport Company filed a complaint with the PSC on July 27, 1977, alleging, among other things, that Maas' Special Certificate had been abandoned and sought to have the certificate cancelled by the PSC. On August 5, 1977, Northern Tank Line filed a complaint and petition to intervene with the PSC. This petition to intervene was granted and seven other common motor carriers were also subsequently allowed to intervene.[2] Austad was permitted to intervene in support of Maas' position.

A hearing was held before a hearing examiner of the PSC on October 6, 1977, and by order dated December 12, 1977, the PSC, in a 2–1 decision, revoked and cancelled Maas' certificate.

The PSC found that none of Maas' equipment was operable or licensed, and, since May 1, 1977, Maas' only truck traffic was with the truck leased from Austad. The PSC also found that Austad was in essence providing the transportation service. The relevant PSC's findings follow:

## "VII.

"Maas has little knowledge of the operations and is not exercising any control over the actual conduct of the transportation service. Maas is not vested with complete control or possession and use of the vehicle and is not the one actually serving the shipper. Maas has no funds with which to operate said leased vehicle. The drivers are paid and dispatched by Austad and payroll records are kept by Austad. The equipment is owned, maintained and fueled by Austad. Austad is soliciting traffic in Maas' name, but Austad hires, dispatches and pays the drivers, at no financial risk to Maas. Austad obtained the insurance and has guaranteed payment of the premium."

1. "Special Certificate # 251
   1. GENERAL COMMODITIES:
   To, from and within the cities of Fargo, Bismarck, Jamestown, Valley City, Grand Forks, Devils Lake, Minot, Williston, Dickinson and Mandan, North Dakota, and to, from and within all points and places within the State of North Dakota, situated west of North Dakota Hwy. No. 3.
   2. HOUSEHOLD GOODS, HEAVY SET–UP MACHINERY, CONSTRUCTION AND MINING EQUIPMENT, LUMBER AND LUMBER PRODUCTS, ELECTRIC AND TELEPHONE LINE MATERIALS, OIL FIELD EQUIPMENT, MATERIALS, SUPPLIES AND COMMODITIES OF ALL AND EVERY KIND AND CHARACTER USED IN CONNECTION WITH THE EXPLORATION FOR, DRILLING FOR, PRODUCTION OF AND TRANSPORTATION OF OIL AND GAS; CRUDE OIL, WATER, CRUDE PETROLEUM PRODUCTS, LIQUIFIED PETROLEUM PRODUCTS, BUTANE AND PROPANE, CEMENT AND CEMENT PRODUCTS; LIVESTOCK, SEEDS, FEEDS AND GRAINS.

   Between all points and places within the State of North Dakota.
   3. REFINED PETROLEUM PRODUCTS EXCEPT BUTANE AND PROPANE:
   From and to cities of Dickinson, Tioga, Williston and Mandan, and all other points within the State of North Dakota, and between the points of Fargo, Jamestown, Valley City, and Bismarck, Mandan, Dickinson, Williston, Minot, Devils Lake and Grand Forks and between all points within the State of North Dakota lying west of North Dakota Hwy. No. 3.
   4. CONTRACTORS EQUIPMENT, MATERIALS AND SUPPLIES:
   From, to and between Intercontinental Ballistic launching sites in the State of North Dakota, east of North Dakota Hwy. ¶ 3.
   5. RESTRICTION:
   Excludes the transportation of Water."

2. Getter Trucking, Inc., Transport, Inc., Indianhead Truck Line, Inc., Matador Service, Inc., Suhr Transport Co., Lawrence Transportation, and Skjonsby Truck Line, Inc.

"VIII.

"The Sheriff of Williams County, North Dakota is familiar with substantially all the trucking equipment of the Respondent, Mass Transport, Inc., which is located in Williston or stored on a farm west of the City of Williston, and in his opinion, none of the equipment of the Respondent, Maas Transport, Inc., is operable or in running condition, nor is any of the equipment licensed."

The PSC stated in its conclusions of law that Maas had "violated the laws of this State in turning its operations under Special Certificate No. 251 over to another carrier without the approval of this Commission under the guise of leasing a vehicle from another carrier." The PSC also concluded that, "Non-use of authority, when accompanied by either inability to operate, refusal to accept business, or non-compliance with a proper Commission Order, ordinarily constitutes sufficient grounds for a finding of abandonment." The PSC then concluded that since Maas had neither the equipment nor resources to acquire any equipment to provide the services that it was obligated to provide, it had abandoned its authority.

Maas appealed to district court alleging the following specifications of error:

"1. That the Public Service Commission erred in making and entering a conclusion of law that Maas Transport, Inc., violated the laws of this state in turning its operations under Special Certificate No. 251 over to another carrier without the approval of this Commission under the guise of leasing a vehicle from another carrier.

"2. That the Public Service Commission erred in making and entering a conclusion of law that Maas Transport, Inc., has neither the equipment nor resources to acquire any equipment to provide the transportation services which it is obligated to furnish under the statutes of the State of North Dakota and the Rules and Regulations of the Public Service Commission of the State of North Dakota.

"3. That the Public Service Commission erred in making and entering a con-

clusion of law that Maas Transport, Inc., has unlawfully abandoned its common motor carrier operations under Special Certificate No. 251, and shippers formerly relying upon it for service are now using the services of other authorized carriers.

"4. That the Public Service Commission erred in making and entering a conclusion of law that Special Common Motor Carrier Certificate No. 251 should be revoked and cancelled by reason of the unlawful abandonment of service thereunder by Maas Transport, Inc."

The district court affirmed the PSC's order and this appeal followed.

The issue, as stated by the appellant, is whether or not the North Dakota Public Service Commission should have revoked the operating authority of Maas Transport, Inc., based on a complaint filed with the Commission by several competing carriers?

We have noted many times the scope of our review in appeals from an administrative agency. *See, e. g., Steele v. North Dakota Workmen's Compensation Bureau,* Civil No. 9481 (N.D.1978); *Bank of Hamilton v. State Banking Bd.,* 236 N.W.2d 921 (N.D.1975); *O'Brien v. North Dakota Workmen's Comp. Bureau,* 222 N.W.2d 379 (N.D. 1974); and *Geo. E. Haggart, Inc. v. North Dakota Work. Comp. Bur.,* 171 N.W.2d 104 (N.D.1969).

■ In an appeal from the Public Service Commission, we follow the specific statutory guidelines contained in the Administrative Agencies Practice Act, Chapter 28–32, N.D.C.C. *See* Section 49–18–43, N.D.C.C.; *Petition of Village Board of Wheatland,* 77 N.D. 194, 202, 42 N.W.2d 321, 326 (1950).

Section 28–32–21, N.D.C.C., provides for review in the Supreme Court as follows:

"The judgment of the district court in an appeal from a decision of an administrative agency may be reviewed in the supreme court on appeal in the same manner as provided in section 28–32–19, except that the appeal to the supreme court must be taken within sixty days after the service of the notice of entry of judgment in the district court."

Section 28–32–19, N.D.C.C., provides as follows:

"The court shall try and hear an appeal from the determination of an administrative agency without a jury and the evidence considered by the court shall be confined to the record filed with the court. If additional testimony is taken by the administrative agency or if additional findings of fact, conclusions of law, or a new decision shall be filed pursuant to section 28–32–18, such evidence, findings, conclusions, and decision shall constitute a part of the record filed with the court. After such hearing, the court shall affirm the decision of the agency unless it shall find that any of the following are present:

1. The decision or determination is not in accordance with the law.

2. The decision is in violation of the constitutional rights of the appellant.

3. Provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions and decision of the agency are not supported by its findings of fact.

If the decision of the agency is not affirmed by the court, it shall be modified or reversed, and the case shall be remanded to the agency for disposition in accordance with the decision of the court."

■ Maas has not challenged the PSC's findings of fact; therefore, we assume that the findings are correct. *Haugland v. North Dakota Employment Security Bureau,* 218 N.W.2d 181, 183 (N.D.1974). We must still determine, however, if the PSC's conclusions and decision are supported by its findings of fact. Maas apparently argues that the PSC's conclusion that it had abandoned its operations is in error because Maas has "never refused to handle any traffic tendered to him." Maas relies on a statement in *Eklund Brothers Transport,*

*Inc. v. Thompson,* 146 N.W.2d 613, 616 (N.D.1966) in which we stated:

"Unless there is a demand for such service by a prospective shipper, failure to exercise the authority does not amount to nonuse of the authority given to a special certificate holder . . . .."

■ Thus, the PSC submits that resolution of this case hinges upon the following issue: Can there be an abandonment of authority without evidence of a refusal by a carrier to transport a tendered shipment?

In *Eklund,* the carrier whose authority was questioned had received its certificate in 1956, but had only used a portion of the full authority. In 1963, following a management change, the carrier began to exercise the remaining authority granted in the certificate. A competing carrier petitioned the PSC to amend the certificate to exclude the authority that had not been used previously. The PSC found that the unused portion of the certificate had become dormant because of nonuse. The district court reversed the PSC's determination that an appeal to this court followed. We affirmed the district court, holding that "a careful review of the record reveals that the evidence is not sufficient to sustain the determination of the Commission's finding of an abandonment of service, or that [the] special certificate . . . was, in any part, dormant." 146 N.W.2d at 616. In reaching this conclusion, we reasoned that because the certificate in question was a special certificate, its holder was not required to furnish regular service over regular routes. Indeed, a "special common motor carrier" is defined as one "operating over irregular routes, not on schedule time, at the will and command of the shipper." Section 49–18–01(7), N.D.C.C. Because the record did not reveal any demand for the service in question and because a special certificate was involved, we found no evidence of a nonuse that amounted to an abandonment of the service. We do not believe the decision holds that there must be a demand for services under all circumstances before an abandonment occurs. If a carrier is obviously incapable of rendering services to the

public, it is unreasonable to expect the public to request services from such a carrier.

In *Musselwhite v. State Corporation Commission,* 61 N.M. 97, 295 P.2d 216 (1956), the Supreme Court of New Mexico refused to find abandonment under similar circumstances to those found in *Eklund:*

"We hold that mere non-user by the holder of a certificate authorizing non-scheduled service over irregular routes does not constitute either abandonment or discontinuance of service by a certificate holder shown to be at all times fully equipped, ready, able and willing to operate." 61 N.M. at 100, 295 P.2d at 218.

The New Mexico court went on to state, however, that inability to operate may also be sufficient to establish abandonment:

"Non-user, plus inability to operate, or refusal to accept business, or non-compliance with proper order made by the Corporation Commission might in any given case amount to abandonment or discontinuance of service." 61 N.M. at 100, 295 P.2d at 218.

■ We believe that a "no demand for service—no abandonment" test, if applied under all circumstances, would permit a carrier to obtain the transfer of a nonused authority in contravention of Section 49–18–17, N.D.C.C., which provides that a carrier can abandon or discontinue service only upon approval of the PSC. *See Fargo Freight Truck. v. North Dakota Pub. Serv. Com'n.,* 129 N.W.2d 368 (N.D.1964). We do not believe that such a result was contemplated by the Legislature. We therefore hold that Maas' nonuse of authority, accompanied by its inability to operate, justified the PSC's conclusion that the certificate was abandoned and that this conclusion supports the decision of the PSC revoking the certificate.

Maas also argues, however, that the PSC's conclusion that it is unable to operate is in error. We disagree. PSC's conclusions are adequately supported by the findings of fact. The evidence upon which the findings of fact are based establishes that Maas did not have the ability to provide the service that it was required to perform. Since May 1, 1977, Maas' only traffic has

been with a truck leased from Austad and this service was in actuality performed by Austad.

The order of the Public Service Commission is affirmed and, therefore, the judgment of the district court is affirmed.

SAND, PAULSON, PEDERSON and VANDE WALLE, JJ., concur.