In the Matter of the Investigation of
DUANE HALL TRUCKING,
INC., Plaintiff,

v.

PUBLIC SERVICE
COMMISSION, Defendant.

No. 860128.

Supreme Court of Utah.

May 8, 1987.

C. Reed Brown, Salt Lake City, for plaintiff.

David L. Stott, Salt Lake City, for defendant.

**SCOTT DANIELS, District Judge:**

This is an appeal from a decision of the Public Service Commission of Utah concerning motor carrier operating rights. Following an investigation, the Commissioner ordered the operating status of a contract carrier converted to a common carrier, and the party concerned, Duane Hall Trucking, Inc., challenges this decision on constitutional and statutory grounds. Because the statutory basis of the plaintiff's argument merits reversal, we find no need to address the constitutional issues.

Duane Hall Trucking ("DHT") provides trucking services to ship oil field drilling fluids throughout the state of Utah and holds a contract carrier permit that was originally issued in 1949 to B & M Service Company. DHT purchased the permit in 1976, and in 1977, the authority was expanded when the Commission amended the certificate by deleting a restriction that had previously limited the holder of the permit to one shipper, Shell Oil Company. That action was affirmed by this Court in *Bowen Trucking v. Public Service Commission*, 559 P.2d 954 (Utah 1977).

As an open-ended contract carrier, DHT is unique to the market it serves in that it is unlimited in the number of contracts it may enter. Virtually all other contract carrier permits issued by the Public Service Commission restrict the holder to a limited number of specifically identified shippers. Furthermore, contract carriers are not required to file tariffs or pay a utility regulatory fee, and they are not subject to the price regulations set by the Public Service Commission. They are free to select among the various shippers they may wish to serve, and they may charge whatever rate is agreed upon by the parties. Common carriers, on the other hand, are required to comply with the requirements of the Public Service Commission, and they must offer uniform pricing to all customers. The result is that DHT has a competitive advantage over the common carriers in its ability to undercut the competition to secure the more lucrative contracts.

This matter originally came before the Public Service Commission on the complaint of three common carriers that provide similar services throughout the state of Utah. The essence of their complaint was that DHT had an unfair competitive advantage because its permit allowed it to operate in the same manner as a common carrier while avoiding the Commission's

pricing controls. After an investigation by the Public Utilities Division of the Public Service Commission, an order to show cause was issued requiring DHT to show why its permit should not be converted to a common carrier permit or, in the alternative, why the Commission should not issue rules and regulations governing contract carriers such as DHT.

Following hearings on the matter, an administrative law judge issued a report and order that was approved and confirmed by the Commission. Through the report and order, the Commission revoked DHT's contract carrier permit and issued a new certificate authorizing DHT to operate as a common carrier. This decision was based on the conclusion of the administrative law judge that DHT's open-ended permit allowed it to exercise an unfair competitive advantage over common carriers that provided the same or similar services, and DHT has appealed.

We remain cognizant of the general rule of law that "the construction of statutes by governmental agencies charged with their administration should be given considerable weight." *McPhie v. Industrial Commission*, 567 P.2d 153, 155 (Utah 1977); *West Jordan v. Department of Employment Security*, 656 P.2d 411, 412 (Utah 1982). Accordingly, unless the Commission's decision is unreasonable or unlawful, it will not be disturbed by this Court.

The Commission found that it was empowered by two Utah statutes which were in effect at the time of the decision to revoke a contract carrier permit and replace it with a common carrier certificate if the Commission determined that the revocation was in the public interest.

Utah Code Ann. § 54–6–20 (1985) provided: "The commission may, at any time for good cause, and after notice and hearing, suspend, alter, amend or revoke any certificate, permit or license issued by it hereunder."

Section 54–7–13 provided:

The commission may at any time, upon notice to the public utility affected and after opportunity to be heard as provided in the case of complaints, rescind, alter or amend any order or decision made by it. Any order rescinding, altering or amending a prior order or decision shall when served upon the public utility have the same effect as is herein provided for the original orders or decisions.

The Commission's legal authority to revoke a motor carrier operating permit is not disputed. *Savage Brothers v. Public Service Commission*, 723 P.2d 1085 (Utah 1986). What is disputed are the grounds necessary for the Commission to exercise its power. The position taken by the Commission is that the only standard for determining whether an action is appropriate is to decide whether it is in the public interest. Because common carriers are allegedly being damaged by the ability of DHT to undercut their prices, the Commission claims, the public interest requirement is satisfied. DHT argues first that section 54–7–13 does not apply because a contract carrier is not defined as a public utility and, second, that the "good cause" requirement of section 54–6–20 has not been met absent some violation of the existing rules and regulations. DHT finds further support in Rule D1.6(b) of the Motor Carrier Rules and Regulations (rev. January 1985), which states, "Permits heretofore issued and in good standing shall remain in effect subject to all rules and regulations pertaining thereto." DHT argues that its actions have been neither illegal nor in contravention of existing rules and regulations and, for this reason, the Commission is precluded from taking any action on the permit. We are inclined to agree.

The Public Service Commission has a broader range of power when it is considering applications for new or expanded route authority than it does where existing carrier rights are concerned. In *Big K Corp. v. Public Service Commission*, 689 P.2d 1349, 1355 (Utah 1984), we stated, concerning new applicants: "The ultimate criterion against which all relevant factors are to be evaluated is the 'public good and convenience.'" (Quoting *Salt Lake & Utah Railroad Corp. v. Public Service Commission*, 106 Utah 403, 408, 149 P.2d 647, 649 (1944).) With reference to existing carri-

ers, however, the authority of the Commission is somewhat more limited by statute.

■ Under section 54–6–20, the Commission may "suspend, alter, amend or revoke" any certificate when there is "good cause" and after notice and hearing. Although the Commission should not allow any carrier to engage in predatory competition, its authority to terminate a carrier's permit is limited to the statutory "good cause" requirement, and this means more than a perceived threat to the well-being of the competition. Good cause requires some definitive violation of an existing rule or regulation, primarily so that the carrier is on notice that his conduct is subject to sanction. Examples of good cause license revocations in other jurisdictions can be found in *State ex rel. Utilities Commission v. United Tank Lines, Inc.*, 34 N.C. App. 543, 239 S.E.2d 266 (1977) (unapproved transfer of operating authority); *Dan Dugan Transport Co. v. Maas Transport, Inc.*, 275 N.W.2d 855 (N.D.1979) (abandonment); and *Cleveland Freight Lines v. Public Utilities Commission*, 62 Ohio St.2d 50, 402 N.E.2d 1192 (1980) (improper movement of goods).

■ This requirement is reflected in Rule D1.3(b) of the Motor Carrier Rules and Regulations (rev. January 1985), which states:

> Any common motor carrier or contract carrier violating any of the rules or regulations herein prescribed, or any of the rules or regulations prescribed by the state of Utah, shall be subject to fines ... and/or may have any and all rights and privileges granted by the Commission revoked *upon proper proof of such violation.*

(Emphasis supplied.) We hold that the action of the Commission constituted an unreasonable and unwarranted revocation of motor carrier operating rights because it lacked the authority to do so absent a finding of good cause. This holding is in accord with the principle set forth by the Ohio Supreme Court in *Cleveland Freight Lines*, 62 Ohio St.2d at 53, 402 N.E.2d at 1195, when it said, "[W]hen there is not a definite commission rule, order, or decision

forbidding a particular practice, the imposition of a substantial penalty is unreasonable."

In a situation such as the present one, where the carrier has stayed within the bounds of his authority, the Commission is powerless to simply revoke a contract carrier permit on a notice to show cause. Such an action must be based on the violation of a valid statute, rule, or order of the Commission. To hold otherwise would force the carriers to attempt to second-guess the Commission's reactions to their operations in order to maintain good standing, even though no rules have been violated.

Reversed.

HOWE, DURHAM and ZIMMERMAN, JJ., concur.

STEWART, Associate C.J., dissents.

HALL, C.J., having disqualified himself, does not participate herein; SCOTT DANIELS, District Judge, sat.